Curtis WILLIAMS, Appellant,

v.

FRANK PARRA CHEVROLET, INC.,
et al., Appellees.

No. 5683.

Court of Civil Appeals of Texas,
Waco.

June 9, 1977.

David K. Line, Robert W. Hartson, Inc., Dallas, for appellant.

C. R. Tabor, Tabor & Cline, O. Glen Weaver, Kahn & Weaver, Irving, for appellees.

## OPINION

JAMES, Justice.

This is a suit for malicious prosecution. At the close of Plaintiff-Appellant's evidence, the trial court upon Defendant-Appellees' motion withdrew the case from the jury and entered judgment that Plaintiff-Appellant take nothing, from which Plaintiff appeals. We reverse and remand.

Plaintiff-Appellant Curtis Williams brought this suit against Defendants Frank Parra Chevrolet, Inc., and its agent, Joe Bates, Appellees herein, for malicious prosecution, and alternatively, for invasion of privacy. Trial was to a jury, and after Plaintiff rested, the trial court granted an instructed verdict in favor of both Defendants, from which Plaintiff Williams appeals. Plaintiff-Appellant contends that the trial court erred in granting the instructed verdict, asserting there is evidence of probative force to raise fact issues concerning each element of his cause of action for malicious prosecution. We sustain this contention, and thereby reverse and remand the cause for retrial. Under our view of the case, it is not necessary for us to pass upon Appellant's point of error relative to his asserted cause of action for invasion of his right of privacy, and we express no opinion thereupon.

■ In determining the propriety of an instructed verdict, we are required to view the evidence in the light most favorable to the losing party. Any inference which properly may be drawn from the evidence must be indulged against the granting of the motion. Conflicts, if any, in the testimony are to be disregarded. If the record reflects any testimony of probative force, either direct or circumstantial, in favor of the party against whom the verdict was instructed, we must hold the instruction to be improper. Testimony adverse to the losing party will be disregarded. *White v. White* (1943) 141 Tex. 328, 172 S.W.2d 295; *Air Conditioning, Inc. v. Harrison-Wilson-Pearson* (1952) 151 Tex. 635, 253 S.W.2d 422; *McRoy v. Riverlake Country Club* (Dallas CA 1968) 426 S.W.2d 299, NRE.

Applying the foregoing rules to the case at bar, we herewith state the following as the pertinent facts shown by the record: On May 16, 1973, Plaintiff Curtis Williams went to the business premises of Frank Parra Chevrolet, Inc., and contracted to purchase a 1971 Chevrolet Tandem dump truck. Plaintiff's dealings were with Defendant Joe Bates, then sales manager for Frank Parra Chevrolet, Inc. The total price of the truck was $9635.50. In order to pay the down payment, Plaintiff paid $2500.00 in cash, and to pay the remaining $750.00 of the down payment, he gave Mr. Bates three checks. Plaintiff testified he gave the Defendant Bates three checks signed by him (Plaintiff) in blank, shown to be drawn upon his checking account in the Fair Park National Bank, with serial numbers respectively shown as 287, 288, and 289. In other words, Plaintiff testified that each of these checks were left blank insofar as the date, payee, and amount were concerned; but were each signed "Curtis Williams" by Plaintiff as maker thereof. Plaintiff further testified that it was agreed between him and Bates that Bates would fill out each of these checks in the amount of $250.00, and would show them to be payable to Frank Parra Chevrolet, Inc., and that check No. 287 would be held for thirty days, until June 16, 1973, before being presented to the bank for payment; that check No. 288 would be held for sixty days, until July 16, 1973, before being presented to the bank for payment; and that check No. 289 would be held for ninety days, until August 16, 1973, before being presented for payment.

Joe Bates testified that he filled out all three of the checks, each in the amount of

$250.00 in Plaintiff's presence, and then gave them to Plaintiff for his signature. However, Bates admitted in his testimony that he agreed with Plaintiff that he would hold check No. 287 for 30 days, check No. 288 for sixty days, and check No. 289 for ninety days, before presentation to the bank for payment.

The record does not show the exact date check No. 287 was presented for payment; however, it was so presented, and on July 11, 1973, it was dishonored because of insufficient funds. Said check No. 287 bore the date of "5–16–73." Plaintiff was thereafter notified that said check had been dishonored; whereupon on August 25, 1973, he went in to Frank Parra Chevrolet, Inc., and paid said Defendant $320.00, and secured a receipt therefor, which he testified he paid for the purpose of paying off check No. 287 of $250.00 plus an additional $70.00 to be applied on check Nos. 288 and 289. This receipt for the $320.00 was signed by Joe Bates.

On October 10, 1973, someone at Frank Parra Chevrolet, Inc., filed a complaint against Plaintiff Curtis Williams for the criminal offense of swindling by worthless check. The complaint form was shown by notation thereon to have been mailed in to the District Attorney's office on October 10, 1973. The name of the complaining party is shown to be "Joe R. Bates;" however, Bates denied that he personally filed the complaint. Be that as it may, Bates admitted that it was his responsibility in behalf of his employer to refer unpaid checks to the District Attorney's office, and that he did cause the complaint to be made. This complaint charged Plaintiff Williams with swindling by worthless check, to wit, of check No. 287 in the amount of $250.00. The complaint form asked the question: "Was this a postdated or hold check?" to which the answer "No" was given on said complaint form.

This criminal complaint resulted in Plaintiff Williams being indicted by the Grand Jury of Dallas County of the felony offense of swindling by worthless check by passing check No. 287. Thereafter, a warrant for Plaintiff's arrest was issued; and on April 8, 1974, Plaintiff was arrested at his home and was incarcerated in the Dallas County Jail where he was required to remain for some ten to fifteen hours until he was able to post bond for his release. Making bond cost Plaintiff $300.00, and in addition thereto he incurred attorney's fees for his defense of this indictment in the amount of $600.00.

On August 30, 1974, the criminal prosecution was dismissed upon motion of the District Attorney for the stated reason, inter alia, that "the defendant's bank records indicate that at the time he wrote the abovementioned check there were in fact funds sufficient to cover this check." This was true, because the Plaintiff's bank records introduced in evidence in the case at bar showed that on May 16, 1973, the date Plaintiff gave the check in question, Plaintiff then had on deposit in his checking account the amount of $354.04.

The truck which Plaintiff bought from Defendants had considerable mechanical troubles from the beginning. After two unsuccessful attempts on the part of the Defendant Chevrolet Co. to repair the truck, said Company thereafter refused to work on the truck any more; whereupon Plaintiff took the truck to one Bel-Air Garage for repairs. While the truck was in the Bel-Air Garage, it was repossessed from Plaintiff.

The elements necessary for a malicious prosecution action are: (1) The commencement of a criminal prosecution against Plaintiff, (2) which has been caused by the Defendant or through Defendant's aid or cooperation, (3) which terminated in favor of the Plaintiff; (4) that Plaintiff was innocent; (5) that there was no probable cause for such proceeding; (6) that it was done with malice, and (7) resulted in damages to Plaintiff. *Flowers v. Central Power and Light Co.* (Waco CA 1958) 314 S.W.2d 373, NRE. Also see *Yianitsas v. Mercantile National Bank at Dallas* (Dallas CA 1967) 410 S.W.2d 848, 850, no writ.

The motion for instructed verdict filed by Defendants (as granted by the trial court)

asserted that there was no evidence of probative force in the record to support elements (4), (5), and (6) of Plaintiff's cause of action as above stated. That is to say, that there is no evidence to show: (4) that Plaintiff was innocent of the criminal charge, (5) that there was no probable cause for such criminal proceeding, and (6) that such proceeding was done with malice on Defendants' part.

■ We do not agree with these contentions, because we believe there is evidence of probative force in the record in support of all three of these elements of Plaintiff's cause of action.

We believe the following evidence supports Plaintiff's innocence of the criminal charges: (1) Plaintiff had more than $250.00 on deposit in his checking account on May 16, 1973, the day he gave check No. 287; (2) Plaintiff had actually paid off to Defendants check No. 287 on August 25, 1973, about a month and a half before the Defendants filed the criminal complaint; (3) The District Attorney dismissed the indictment because in his opinion the facts would not support a conviction against Williams for swindling by worthless check. Mr. Tom Callan testified that he was an assistant District Attorney who was handling the criminal prosecution against Curtis Williams, and in his opinion Williams could not be convicted for two reasons, to wit: because he (Williams) had more than enough money on deposit in his checking account on May 16, 1973, the date he gave $250.00 check No. 287, and for the further reason that said check was a "hold" check. In other words, Mr. Callan testified if the check was a "hold" check (as this check was), that "it would not support a conviction." In our opinion, the foregoing constitutes ample evidence of Plaintiff Williams' innocence.

Now, with reference to the problem of the evidence which we believe raises the fact issue of the absence of probable cause for the criminal prosecution: "Probable cause" is defined as "the existence of such facts and circumstances as would excite belief in a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the crime for which he was prosecuted." *Ramsey v. Arrott* (Comm.App.1885) 64 Tex. 320, opinion adopted by our Supreme Court. Also see *J. C. Penney Co. v. Gilford* (Houston 1st CA 1967) 422 S.W.2d 25, 28, NRE.

Applying the foregoing definition to the case at bar, there is evidence that there were facts within the knowledge of Defendants that would lead them to believe Williams was not guilty of the criminal offense, because at the time Defendants filed the criminal complaint they actually knew: (1) that check No. 287 was a "hold" check, which fact was not disclosed to the District Attorney at the time of filing, and (2) that check No. 287 had already been actually paid off by Plaintiff to Defendants about six weeks before the complaint was filed. This evidence in our opinion raises the fact issue of a lack of probable cause for the filing of the criminal complaint.

Finally, we believe there is evidence which raises the issue of malice on Defendant's part in filing the criminal prosecution against Plaintiff Williams. In the first place, Defendants represented to the District Attorney that the subject check was not a "hold" check, when in truth and in fact it was a "hold" check. Secondly, Defendants actually knew the check had been paid off before the criminal charges were filed.

In *Ramsey v. Arrott* (Comm.App.1885) 64 Tex. 320, opinion adopted, the following language is used:

"It is often said that malice may be inferred from circumstances; this means that the circumstances attending the prosecution may be such as to satisfy the mind that the party was actuated by wrongful motives in the institution and continuance of the prosecution. This wrong motive, coupled with a wrongful act wilfully done to the injury of another, constitutes legal malice; and may be established as well by circumstantial as direct evidence. The existence or non-existence of malice is a question of fact to be determined from a consideration of the evidence." Also see *Reed v. Lindley* (Fort

Worth CA 1922) 240 S.W. 348, no writ; *Aldana v. Tavason* (El Paso CA 1929) 15 S.W.2d 678, no writ; *J. C. Penney Co. v. Gilford* (Houston 1st CA 1967) 422 S.W.2d 25, NRE.

In summary, we believe the record shows evidence of probative force to raise fact issues concerning each element of Plaintiff's cause of action for malicious prosecution. This being so, the instructed verdict was improper. We accordingly reverse and remand the cause for retrial.

REVERSED AND REMANDED.