**Wolcott E. STEWART and Stewart Heart Company, Appellants,**

**v.**

**CONTROL DATA CORPORATION and Charles Douglas Callahan, Appellees.**

No. 8639.

Court of Civil Appeals of Texas, Texarkana.

March 27, 1979.

Rehearing Denied May 1, 1979.

Earl L. Yeakel, III, Kammerman, Yeakel & Overstreet, Austin, for appellants.

William T. Hankinson, Thompson, Knight, Simmons & Bullion, Michael L. Parham, Vial, Hamilton, Koch, Tubb, Knox & Stradley, Dallas, for appellees.

CORNELIUS, Chief Justice.

This is a malicious prosecution action filed by Dr. Wolcott Stewart against Charles Douglas Callahan and his employer, Control Data Corporation. The jury found against Stewart on several essential elements of his cause of action, and a take nothing judgment was entered. Stewart brings this appeal contending that the court erred in admitting certain items of evidence and in excluding others.

The evidence, viewed most favorably to the jury verdict, revealed the following: In January of 1972 Stewart was engaged in organizing and developing a division of his company, Stewart Heart Company, to be known as Money Power. Money Power was to be primarily an electronic system for providing cash, instant credit, and money transfer by means of identification cards and an elaborate computer system. The plan initially envisioned a nationwide network composed of 26 large computers and 30,000 terminals. Ultimately it was contemplated that the plan would extend worldwide. Callahan was a senior systems analyst for Control Data Corporation, and Stewart consulted him about the computer equipment Money Power would need to im-

plement its plan. In the course of the discussions Callahan became suspicious that the plan might not be a legitimate operation. His suspicions were aroused by several things: Stewart was representing that the plan would be in operation within four to six months, and Callahan knew that the computers could not even be obtained in such a short period of time. Stewart was talking about over $100,000,000.00 worth of computer hardware, yet he had no computer training, and only one of his salesmen/associates had any previous experience or connection with the computer industry. As Stewart's cash reserves were extremely limited, the plan was to be financed through the sale of 15,000 franchises at a cost of $20,000.00 each, and Callahan learned that five of Money Power's salesmen/associates had previously worked for Glenn Turner and his Dare To Be Great pyramid franchising program which had received publicity in Texas and elsewhere as a fraudulent and illegal pyramid operation.

During the discussions with Callahan, Stewart and his associates presented and explained Money Power's goals, which were to provide cash transfers, tax preparation, legal counsel, banking services, group buying discounts, health insurance, money collection services and instant cash to a potential 15,000,000 customers through an extensive franchise and computer network. Stewart told Callahan that Money Power would have a first year cash flow of $522,-000,000,000.00 with a net profit of $10,000,-000,000.00. One of the salesmen represented that a $20,000.00 franchise would net $102,000.00 the first year and that at the end of the first year it would be worth $1,000,000.00, and that Money Power would buy it back from any purchaser who was dissatisfied. Based on these goals and representations, together with the fact that most of Stewart's salesmen had recently worked for Glenn Turner, Callahan thought that Money Power might be a fraudulent franchise pyramid scheme, so he telephoned the district attorney's office to determine if they were investigating Stewart. They were not, but upon hearing of the plan Stewart had presented to Callahan, they asked him to cooperate with them in making such an investigation. After seeking advice of counsel, Callahan agreed to cooperate. At the request of the district attorney's office he arranged a meeting between Stewart and some of his associates and Sheriff's Deputy Linebarger, whom Callahan introduced as a wealthy potential investor. A female officer also attended and was introduced by Callahan as his wife. Stewart presented Money Power's plan to Linebarger and urged that he become a purchaser of a franchise, promising him that if he did so he would also be hired as one of the company's district managers at a salary of $799,000.00 per year. Linebarger deferred, saying he needed time to consider the proposition. He then asked Callahan if he felt the plan could be implemented within the time frame contemplated by Stewart, and Callahan said that he did not think so. Linebarger subsequently arrested Stewart and his associates and filed a complaint against them charging conspiracy to commit theft. The Tarrant County Grand Jury, after hearing testimony, returned an indictment for the same charge. Later, the district attorney filed a motion to dismiss the case. As ground for dismissal the motion listed the following:

"1. Deposition of expert consulted by the Defendants was taken in this case. He will not testify that the plan set forth by the Defendants was impossible to accomplish.

2. Insufficient evidence to support charge of conspiracy."

In February of 1973 Stewart initiated this action against Control Data Corporation and Callahan, alleging that the prosecution was instituted at the behest of Callahan, and that his action in doing so constituted malicious prosecution.

Evidence produced on behalf of Stewart was that he held a Ph.D in animal husbandry and physiology, and had pioneered in the development of animal organ transplants and an artificial heart; that his plan for Money Power, although quite ambitious, was not impossible; and that Stewart and his associates were sincere in their efforts

to implement the plan. There was no evidence of any actual fraudulent act or fraudulent intent.

■ The plaintiff in a malicious prosecution case has the burden of proving seven essential elements: (1) the commencement of a criminal prosecution against him, (2) which was caused by the defendant or through his aid or cooperation, (3) which terminated in favor of the plaintiff by acquittal, (4) that the plaintiff was not guilty of the charge brought against him, (5) that no probable cause existed for the filing of the charge, (6) that it was done with malice, and (7) that the plaintiff was thereby damaged. *Williams v. Frank Parra Chevrolet, Inc.,* 552 S.W.2d 635 (Tex.Civ.App. Waco 1977, no writ); *Parker v. Dallas Hunting and Fishing Club,* 463 S.W.2d 496 (Tex.Civ. App. Dallas 1971, no writ); *Flowers v. Central Power & Light Co.,* 314 S.W.2d 373 (Tex.Civ.App. Waco 1958, writ ref'd n. r. e.). In this case the jury found there was probable cause for the filing of the charge. They also found that Callahan neither caused nor aided the prosecution and that he did not act with malice.

Stewart raises only two contentions on appeal. The first urges that the court erred in admitting evidence concerning Glenn Turner's Dare To Be Great program and the fact that Stewart's salesmen had been employees of that organization. It is asserted that the evidence was irrelevant and prejudicial, and that its admission constituted an improper use of character and reputation evidence.

■ Ordinarily, acts of persons who are not parties to the lawsuit and which are unrelated to the issues being litigated are irrelevant and are not admissible in evidence. But in a malicious prosecution suit the critical issues are whether the defendant had probable cause when he reported the plaintiff to the authorities or took other steps to initiate a prosecution, and if he acted with malice in doing so. The existence of probable cause depends on whether the defendant had reasonable grounds, from the facts known to him at the time, to believe that the plaintiff was guilty of a crime. *Moran Utilities Company v. J. W. Childs,* 392 S.W.2d 536 (Tex.Civ.App. Beaumont 1965, writ ref'd n. r. e.). And malice may be inferred from a lack of probable cause. 37 Tex.Jur.2d Malicious Prosecution, Sec. 14, p. 535. Thus, the question whether Callahan had reasonable grounds to act as he did must be determined on the basis of the facts known to him at the time, and the inferences which those facts would raise in the mind of an ordinary, prudent person. 52 Am.Jur.2d Malicious Prosecution, Sec. 169, pp. 291, et seq. Any evidence legitimately tending to show those facts and inferences, including relevant statements or acts of third persons, is admissible. 54 C.J.S. Malicious Prosecution § 89, pp. 1065, et seq.; § 90, pp. 1071, et seq. Callahan testified that the grandiose nature of Stewart's plan, the apparent impossibility of its being implemented within a few months, and the unrealistic representations of rapid and fantastic profits, together with the facts that the plan depended on the sale of thousands of franchises, and most of Stewart's salesmen were former employees of Glenn Turner's Dare To Be Great enterprise, raised in his mind a suspicion that Money Power might be a fraudulent scheme. Evidence that the salesmen were former employees of Turner, together with some explanation of the nature of Mr. Turner's operation, was therefore relevant on the question of the reasonableness of Callahan's suspicions and resulting actions.

■ Stewart's second contention on appeal relates to the district attorney's motion to dismiss the prosecution. The trial judge admitted the motion into evidence for the limited purpose of showing that the prosecution was dismissed. Stewart contends that the entire motion should have been admitted, including the district attorney's statement that "Deposition of expert consulted by the Defendants was taken in this case. He will not testify that the plan set forth by the Defendants was impossible to accomplish." Callahan contends that under Article 3731a, Tex.Rev.Civ.Stat.Ann. (Supp.

1978–1979),[1] the motion itself was admissible, but the quoted statement, being hearsay upon hearsay and a conclusion, was not admissible.

■ We have concluded that the district attorney's statement should have been admitted. We construe it as a statement of personal knowledge on his part, which had come to him in the performance of his official duties, concerning the effect of Callahan's deposition. The testimony showed that the deposition of Callahan had been taken while the district attorney or his representative was present. The statement in the motion simply relates that, according to the testimony of Callahan which had already been given, he could not or would not testify that Stewart's plan was impossible to accomplish. We further conclude, however, that the action of the trial court in limiting the evidence was harmless error. The entire document was placed before the jury, and no portion of it was deleted or obscured. The trial judge did not instruct the jury that they could not consider the statements in the motion, and the attorneys, especially Stewart's, repeatedly referred to the reasons why the case was dismissed, as stated in the motion, and questioned the district attorney's representative extensively about it. One of Stewart's attorneys testified without objection that he had read Callahan's deposition, and that on the basis of it the State had no case against Stewart. That testimony was, in practical effect, the same as was stated by the district attorney in the motion. Furthermore, the jury found that Callahan did not cause and did not aid or encourage the prosecution. Under the circumstances we cannot conclude that the trial court's action in admitting the motion for a limited purpose was calculated to cause the rendition of an improper judgment. See Tex.R.Civ.P. 434.

The judgment of the trial court is affirmed.

1. "Section 1. Any written instrument, certificate, record, part of record, return, report, or part of report, made by an officer of this State or of any governmental subdivision thereof, or by his deputy, or person or employee under his supervision, in the performance of the functions of his office and employment, shall be, so far as relevant, admitted in the courts of this State as evidence of the matter stated therein, subject to the provisions in Section 3."