Gloria D. AKIN et vir., Petitioners,

v.

George L. DAHL, Respondent.

No. C–1869.

Supreme Court of Texas.

Oct. 5, 1983.

Rehearing Denied Nov. 23, 1983.

McDaniel & Travis, Samuel D. McDaniel, Austin, Kronzer, Abraham, Watkins, Nichols, Ballard and Friend, W. James Kronzer, Houston, for petitioners.

Bickel & Case, Thomas L. Case, Dallas, for respondent.

WALLACE, Justice.

This is a malicious prosecution suit. The court of appeals affirmed the judgment of the trial court, awarding damages to the Respondent herein. 645 S.W.2d 506. We affirm the judgment of the court of appeals.

George Dahl is the father of Gloria Dahl Akin and the father-in-law of her husband, Ted Akin. The Akins and their children are also beneficiaries of a trust established by Mr. Dahl's late wife, Lille E. Dahl, and of which George Dahl is Trustee and a beneficiary. By April of 1978, differences had arisen between the Akins and Mr. Dahl culminating in a letter written by Mr. Dahl to the Akins wherein he announced the termination of all relations between himself and the Akins. When Mr. Dahl wrote this letter in April of 1978, he was unaware that a month earlier, March 28, 1978, Gloria Akin had filed an application for temporary guardianship of her father. Specifically the application stated that:

George Leighton Dahl is not mentally competent to attend to his person or to his business affairs; that because of his personal condition and the nature and extent of his business interests it is necessary that a temporary guardian be appointed; ....

The order was granted on April 20, 1978. On April 25, Mrs. Akin filed a separate application to have Mr. Dahl committed to a hospital for treatment. The order of commitment was signed by a probate judge and on April 26, Mr. Dahl was arrested and committed to Presbyterian Hospital in Dallas. Three weeks later, May 16, this mental illness proceeding was dismissed and no appeal was taken therefrom. On May 22, Mrs. Akin amended her March 28, temporary guardianship application, seeking permanent guardianship. A competency trial was subsequently held with findings favorable to Mr. Dahl, and on May 30, 1978, the Temporary Guardianship Order was revoked. As a consequence of these events, Mr. Dahl filed suit against the Akins, alleging among other things, malicious prosecution. At a trial before a jury, the Akins were found guilty of malicious prosecution and after remittitur, a judgment for Mr. Dahl was affirmed by the court of appeals.

Two issues are considered herein; one concerning a lack of probable cause for initiating the prosecutions and the other touching vicarious liability of a joint tortfeasor.

■ In order to make out a prima facie case of malicious prosecution, the plaintiff must show, among other things, that there was a lack of probable cause for the proceedings brought against him by the defendant. *James v. Brown*, 637 S.W.2d 914, 918 (Tex.1982). It is the contention of the petitioners that once some evidence of probable cause is presented by the defendant, only rebutting evidence as to those specific facts may be shown, and if those specific facts supporting probable cause are not rebutted the question is no longer one for the trier of fact but has been established as a matter of law. Hence, argues petitioner, a judgment notwithstanding the verdict or

instructed verdict was proper because probable cause was established by the Akins as a matter of law and no issue was left for a jury determination.

■ Initially, it is necessary to separate the various types of evidence presented for review. The Akins rest their point of error on testimony and affidavits which they feel was evidence of probable cause to seek guardianship and hospitalization of Mr. Dahl. On the other hand, Mr. Dahl presented independent evidence that he did not require a guardian nor hospitalization, plus evidence rebutting that evidence of the Akins which they allege demonstrated the probable cause to take the action they did. Mr. Dahl was found sane and competent at a jury trial in May of 1978. This eventual adjudication of the mental state of Mr. Dahl is an event subsequent to his confinement and guardianship proceedings and has no bearing on the beliefs and motivations of the Akins when they took the actions they did against Mr. Dahl. This is, however, a two-edged sword. Just as his eventual adjudication as sane and his subsequent release was not evidence of a lack of probable cause, the initial determination of a lack of competency made shortly after his confinement was not evidence of probable cause. Events subsequent to the action of confinement and legal proceedings may tend to show whether the action of the Akins turned out to be correct or incorrect, but is not material to the beliefs and motives at the time the proceedings were instituted. *Green v. Meadows,* 517 S.W.2d 799 (Tex.Civ. App.—Houston [1st Dist.] 1975) *rev'd on other grounds,* 524 S.W.2d 509 (Tex.1975). It is the events prior to the institution of the proceedings which must be examined, and only those events, to determine if the defendants had probable cause to act.

■ In this regard, it is also not evidence of probable cause that the probate courts agreed to take the temporary guardianship and commitment action. *Raleigh v. Heidenheimer Bros. v. Cook,* 60 Tex. 438, 442 (1883). Holding otherwise would only invite chicanery and allow those misleading the lower courts to profit on appeal by their misdeeds. It is the party instigating the lawsuit in question who receives the scrutiny of the court as to the beliefs and motivations and not the magistrate or tribunal which may have initially been convinced that the prosecution was proper.

■ The burden of proving that no probable cause existed for instituting the proceedings in a malicious prosecution case is initially upon the plaintiff, and there inferrably is an initial presumption that a defendant acted reasonably and in good faith and therefore had probable cause. See and compare, *Sebastian v. Cheney,* 86 Tex. 497, 25 S.W. 691, 693–694 (1894). However, this presumption in favor of the defendant disappears when the plaintiff produces evidence that the motives, grounds, beliefs and other evidence upon which the defendant acted were indeed not probable cause to commence the proceedings which the defendant instituted. The burden of proof then shifts to the defendant to offer independent proof of probable cause. Once these opposing parties have entered into a factual contest on the issue of probable cause, a fact issue is created for resolution by the trier of fact. This is a cornerstone of our judicial system. "When the facts are in controversy the question of probable cause must necessarily go to the jury, and then the court must give such instruction as will enable them to draw the correct conclusion from the facts as they may find them and the law thus given." (Citations omitted.) *Landa v. Obert,* 45 Tex. 539, 543 (1876). Not only may the trier of fact look to evidence relative to the motivation and beliefs of the party instigating the proceedings, but the trier of fact may also look to the good faith or lack thereof demonstrated by the prosecutor of the action. *Lloyd v. Myers,* 586 S.W.2d 222, 227 (Tex.Civ.App.—Waco 1979, writ ref'd n.r.e.), *Eans v. Grocers Supply Co.,* 580 S.W.2d 17, 21 (Tex.Civ.App.—Houston [1st

Dist.] 1979, no writ). It is proper for the trier of fact to consider all evidence which the prosecutor of the action knew or should have known relative to the condition of the plaintiff and upon which evidence the prosecutor based or should have based his action. We therefore hold that the jury properly considered all of the evidence surrounding the motivation, beliefs, and good faith of the prosecutor of this action.

■ Petitioners present a no-evidence point concerning the lack of probable cause finding. When considering a no evidence point, we must examine the record to determine if there is at least some evidence of probative force to support the findings of the trier of fact. *Ray v. Farmer's State Bank,* 576 S.W.2d 607, 609–10 (Tex.1979). The evidence is set out in great detail in the court of appeals opinion and we will not repeat it here. However, we have examined the record and find there is evidence to support the jury's findings that the prosecutor of the action in this case lacked probable cause.

■ Lastly, we will consider the standard by which the jury is instructed to make its determination as to the existence or nonexistence of probable cause itself. Long ago, this Court stated in *Ramsey v. Arrott,* 64 Tex. 320 (1885) that, "Among the very best definitions given of probable cause, the absence or want of which is essential in actions for malicious prosecution, is that by the Supreme Court of the United States in *Wheeler v. Nesbitt,* 24 How. 545 [16 L.Ed. 765] and which is, 'the existence of such facts and circumstances as would excite belief in a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the crime for which he was prosecuted.'" *Id.* at 323. *Williams v. Frank Parra Chev. Inc.,* 552 S.W.2d 635, 638 (Tex. Civ.App.—Waco 1977, no writ). The standard set out is an objective one wherein the charge to the jury is one concerning a reasonable person test to find no probable cause. This is essentially the charge set out by the trial court and is approved by this Court.

The second issue before this Court concerns the finding by the trier of fact of a conspiracy between the Akins and the award of exemplary damages flowing therefrom absent a specific finding of malice on the part of Ted Akin.

■ Petitioner's first point of error surrounding this issue is that the evidence is insufficient in law and fact to support the conspiracy finding. This Court is without jurisdiction to entertain a factual insufficiency point. *Hall v. Villarreal Development Corp.,* 522 S.W.2d 195 (Tex.1975). Regarding legal insufficiency, we have examined the record and found evidence to support the jury findings regarding conspiracy. The Akins next argue in essence that Ted Akin cannot be guilty of malicious prosecution absent a finding of malice against him, and as a consequence the exemplary damages may not be awarded against him.

■ Malice is an element of malicious prosecution. *James v. Brown,* 637 S.W.2d at 918. The jury found that Gloria Akin acted with malice in prosecuting the guardianship and mental illness proceedings and that Ted Akin and Gloria Akin acted in a conspiracy in planning, instituting and maintaining the guardianship and mental illness actions. An unlawful act alone is not grounds for punitive or exemplary damages; more is required in the nature of an act which is wanton or malicious. *Ware v. Paxton,* 359 S.W.2d 897 (Tex.1962). In the present case, there was no issue presented to the jury inquiring as to malice on the part of Ted Akin. However, once a civil conspiracy is found, each co-conspirator is responsible for the action of any of the co-conspirators which is in furtherance of the unlawful combination. *Carroll v. Timmers Chev., Inc.,* 592 S.W.2d 922, 926 (Tex. 1979). Therefore, each element of the cause of action of malicious prosecution is imputed to each co-conspirator. If the ob-

ject of the conspiracy is an unlawful tort, such as negligence, which did not contain wanton behavior, malice, or their progeny as an element of the cause of action, then that additional finding would be necessary as to each co-conspirator against whom exemplary damages were sought. In the present case, however, malice is an essential element of the offense of malicious prosecution and a finding that Ted Akin conspired with Gloria Akin in conduct which amounts to malicious prosecution precludes the necessity of a specific finding of malice on the part of Ted Akin.

The judgment of the court of appeals is affirmed.

Concurring opinion by KILGARLIN, J., joined by SPEARS, J.

ROBERTSON, J., not sitting.

KILGARLIN, Justice, concurring.

The majority has correctly concluded that because of the conspiracy finding against Ted Akin it is not necessary that there be a finding of malice on his part for him to be subject to punitive damages.

I write only because the punitive damage issue submitted inquired how much money George Leighton Dahl should be awarded as exemplary damages. That special issue was erroneous, but as no objection was levelled against it, and no points of error preserved as to its submission, the Akins can not now be heard to complain.

The punitive damages issue properly should have been divided into two parts, allowing the jury, if it desired, to assess differing amounts of exemplary damages against the Akins.

This matter has been the settled law of this state since this Court's holding in *St. Louis and S.W. Ry. Co. of Texas v. Thompson,* 102 Tex. 89, 113 S.W. 144 (1908). That case involved allegations of conspiracy to falsely and maliciously accuse Thompson, the railroad's employee, of wrongdoing.

This Court held that if any of the defendants were actuated by malice in making charges against Thompson, then the jury, in its discretion, could assess exemplary damages against any or all of the defendants. However, this Court went on to state that unlike actual damages, all defendants should not be subjected to the same verdict of exemplary damages, because they may have acted with varying degrees of malice, or with no malice at all.

Although there are a few exceptions, the Texas position represents the view taken in an overwhelming majority of jurisdictions in the United States. For cases involving allegations of conspiracy and/or malicious prosecution where it was held that inquiry as to exemplary damages should be made separately as to each defendant, see *Fenslage v. Dawkins,* 629 F.2d 1107 (5th Cir., 1980); *Hotel Riviera, Inc. v. Short,* 80 Nev. 505, 396 P.2d 855 (1964); *Freeman v. Sproles,* 204 Va. 353, 131 S.E.2d 410 (1963); *Mahanna v. Westland Oil Co.,* 107 N.W.2d 353 (N.D.1960); *Edquest v. Tripp & Dragstedt Co.,* 93 Mont. 446, 19 P.2d 637 (1933); *Thomson v. Catalina,* 205 Cal. 402, 271 P. 198 (1928); and *Nelson v. Halvorson,* 117 Minn. 255, 135 N.W. 818 (1912).

Accordingly, I would submit that in cases such as this, a proper submission of punitive damages would be not how much the plaintiff should recover in total, but rather how much the plaintiff should recover as against each specific defendant.

SPEARS, J., joins in this concurring opinion.