

## NUMBER 13-20-00388-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

FR. KRZYSZTOF TOMASZ BAUTA,                                    Appellant,

v.

BISHOP WILLIAM MICHAEL MULVEY,
INDIVIDUALLY AND AS BISHOP OF
THE DIOCESE OF CORPUS CHRISTI,
NATALIE KLOSTERMANN, AND KIRK,
MONROE & KLOSTERMANN, L.L.P.,                                  Appellees.

## On appeal from the 214th District Court
## of Nueces County, Texas.

## OPINION

**Before Chief Justice Contreras and Justices Benavides and Tijerina**
**Opinion by Justice Tijerina**

This is an accelerated interlocutory appeal from the trial court's order granting

motions to dismiss filed by appellees Bishop William Michael Mulvey, individually, and as

Bishop of the Diocese of Corpus Christi ("the Diocese"), Natalie Klostermann, and Kirk,

Monroe & Klostermann, L.L.P. (KM&K) pursuant to the Texas Citizens Participation Act ("TCPA"). *See generally* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001–.011. By seven issues, appellant Fr. Krzysztof Tomasz Bauta argues the trial court abused its discretion by: (1) sustaining appellees' evidentiary objections and thereby violating the prima facie standard of review; (2) overruling his evidentiary objections; (3) considering appellees' evidence to counter his prima facie case; (4) refusing him limited discovery as he established good cause; (5) denying his right to a jury trial on the issue of attorney's fees; (6) assessing $292,770 in attorney's fees against him, and (7) determining that the "attorney's fees regime" of § 27.009 of the civil practice and remedies code is constitutional. We affirm in part and reverse and remand in part.

## I. BACKGROUND

### 1. First Audit

In 2013, Mulvey appointed appellant, a priest, as parochial administrator of a church in Port Aransas. In December of 2016, following appellant's unusual presentation at a meeting with the Finance Council of the Diocese of Corpus Christi, the Council directed Mulvey to conduct an independent, third-party forensic examination of the parish's finances. On behalf of the Diocese, Mulvey contacted Natalie, a certified public accountant with KM&K, to perform a forensic examination of parish records from July 2013 through December 2016.[1] On March 23, 2017, KM&K provided a report to the Diocese's fiscal officer, Greg Seagrave, identifying $203,276 paid by the parish for

---

[1] The Diocese had previously engaged KM&K on other matters.

2

personal or non-parish uses. Following Mulvey's direction, Natalie, Seagrave, and another diocesan representative met with appellant in May 2017 to discuss the report and obtain explanations from appellant regarding the financial anomalies.

Seagrave reported that appellant "failed to provide a satisfactory explanation of the financial anomalies and irregularities set out in the [r]eport." Seagrave further stated that appellant did not deny the charges and instead said that "priests are controlled by the church and make meager salaries," so he is "entitled to personal expenses provided by the church." Seagrave further informed Mulvey that as pastor, appellant felt it was his prerogative to determine how parish funds should be administered. Following appellant's explanations, Mulvey informed appellant that further investigation needed to be done "[g]iven the numerous deviations from diocesan policies and the normal practices for parish finances."

## 2. Second Audit

On October 11, 2017, Mulvey removed appellant from his parochial administrator position on the grounds that appellant was using or misappropriating parish monies. In November 2017, the Diocese contacted law enforcement regarding appellant's possible criminal acts and asked KM&K to provide an addendum to its original report for transactions from January 1, 2017 to September 27, 2017. The addendum identified approximately $12,000 in additional monies paid by the parish for non-parish uses, increasing the total to $215,901.

### 3. The Texas Rangers investigate and charge appellant with theft

The Diocese provided the Texas Rangers with KM&K's reports. The Texas Rangers instituted its own investigation, and supplemented KM&K's reports with subpoenaed statements from different banks from December 2015 through December 2017. Upon receiving these records, KM&K identified over $266,411 in diverted parish monies.

Following the investigation, in June 2018, the Texas Rangers arrested appellant for felony theft. The trial court held an examining trial in August 2019 to consider whether there was probable cause to charge appellant with a crime. *See* TEX. CODE CRIM. PROC. ANN. art. 16.01. During Natalie's cross-examination, she admitted that it was not "illegal" to purchase a desk or furniture. Following similar statements, the prosecutor dropped the charges against appellant but reserved the right to indict appellant in the future: "At this time the [State] . . . is going to enter a no charge . . . with the understanding on the record, however, that once the case is completed, it will be indicted. It's just at this point we're going to no charge it."

### 4. TCPA motions to dismiss

On March 23, 2020, appellant filed suit against appellees alleging malicious prosecution, defamation, and intentional infliction of emotional distress. On May 22, 2020, the Diocese filed a TCPA motion to dismiss, asserting appellant could not establish a prima facie case and that the Diocese could conclusively establish the affirmative defenses of limitations and qualified and judicial proceedings privileges. The Diocese

attached multiple affidavits and business records to support its motion to dismiss. Appellant objected to an affidavit from Diocesan Chancellor Benedict Nguyen, which the trial court overruled.

On May 26, 2020, Natalie and KM&K (collectively, the Klostermanns) filed a TCPA motion to dismiss alleging all of appellants' claims were based on and in response to the Klostermanns' exercise of their right to petition and free speech. They attached Natalie's affidavit along with KM&K's three financial audit reports dated March 23, 2017, December 5, 2017, and June 13, 2018, summarizing her findings of "diverted parish monies."

Appellant responded asserting appellees misled the Texas Rangers by claiming Diocesan property was stolen because he was legally authorized to act as an owner for the funds in question; therefore, it was impossible for him to be guilty of theft of the parish's funds. He attached his own affidavit, which appellees objected to on multiple grounds.

On August 11, 2020, the trial court conducted a hearing on the motions to dismiss. Following a hearing, the trial court granted appellees' TCPA motions to dismiss, denied appellant's motion for discovery, and sustained appellees' evidentiary objections. On September 4, 2020, the trial court conducted a hearing on the issue of attorney's fees. In addition to submitting an affidavit and fee bills, counsel for the Diocese testified regarding his attorney's fees. Counsel for the Klostermanns similarly filed their affidavits and billing records. The trial court awarded appellees' their requested attorney's fees, and this appeal followed.

## II.     TCPA

The TCPA establishes an "expedited procedure for the early dismissal of groundless legal actions that impinge on First Amendment rights." *Greer v. Abraham*, 489 S.W.3d 440, 442 (Tex. 2016). Its purpose is "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002. We construe the TCPA "liberally to effectuate its purpose and intent fully." *Id.* § 27.011(b).

The TCPA establishes a three-step process to determine whether dismissal of a legal action is required. *See Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018). First, the movant has the initial burden to show the TCPA applies. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a). If the movant satisfies that threshold requirement, the burden shifts to the non-movant to establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c). "Clear and specific" has been described as evidence that is "unaided by presumptions, inferences, or intendments." *Better Bus. Bureau of Metro. Hous., Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 355 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). Finally, if the non-movant establishes its prima facie case, the trial court shall dismiss the legal action if the movant "establishes an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law." *Id.* § 27.005(d).

A "prima facie" showing generally "requires only the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (orig. proceeding) (per curiam) (internal quotation marks and citation omitted). A prima facie case "refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015). "It is the 'minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'" *Id.* (citing *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d at 223); *John Moore Servs.,* 441 S.W.3d at 354–355 ("The Legislature's use of the term 'prima facie case' implies a minimal factual burden . . . ."). "In determining whether a legal action . . . should be dismissed . . . , the court shall consider the pleadings, evidence a court could consider under Rule 166a, Texas Rules of Civil Procedure, and supporting and opposing affidavits stating the facts on which the liability or defense is based." TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a). "We review a trial court's denial of a TCPA motion to dismiss de novo" and "view the pleadings and evidence in the light most favorable to the nonmovant." *Segundo Navarro Drilling, Ltd. v. San Roman Ranch Mineral Partners*, 612 S.W.3d 489, 492 (Tex. App.—San Antonio 2020, pet. denied) (citations omitted).

### III.    PRIMA FACIE CASE

By his first three issues, appellant argues the trial court abused its discretion by: (1) sustaining appellees' evidentiary objections, (2) overruling his evidentiary objection to Nguyen's affidavit, and (3) considering appellees' contradictory or rebutting evidence to

counter appellant's prima facie case. As an initial matter, appellant does not challenge the trial court's order dismissing his defamation and intentional infliction of emotional distress claims, so we limit our analysis to appellant's malicious prosecution assertion.

Appellant concedes that the TCPA applies. Therefore, the burden shifted to appellant to establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c). For purposes of this memorandum opinion, we assume—but do not decide—that the trial court erred by sustaining appellees' objections, overruling appellant's objection to Nguyen's affidavit, and considering appellees' contradictory or rebutting evidence. Without getting into the merits of these issues, we look to other evidence before the trial court—notwithstanding appellant's evidentiary objections—to determine whether appellant established "by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.*

## A. Malicious Prosecution

"Actions for malicious prosecution create a tension between the societal interest in punishing crimes and the individual interest in protection from unjustifiable criminal prosecution." *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 520 (Tex. 1997). "Even a small departure from the exact prerequisites for liability may threaten the delicate balance between protecting against wrongful prosecution and encouraging reporting of criminal conduct." *Browning–Ferris Indus., Inc. v. Lieck*, 881 S.W.2d 288, 291 (Tex. 1994). To establish a claim for malicious criminal prosecution, appellant needed to show

8

that: (1) a criminal prosecution was commenced against him; (2) appellees initiated or procured that prosecution; (3) the prosecution terminated in his favor; (4) he was innocent of the charges; (5) appellees lacked probable cause to initiate the prosecution; (6) appellees acted with malice; and (7) he suffered damages. *See Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 n.3 (Tex. 2006); *Coniglio v. Snyder*, 756 S.W.2d 743, 744 (Tex. App.—Corpus Christi–Edinburg 1988, writ denied). We first discuss the fifth element of a malicious prosecution claim—lack of probable cause—because it is dispositive.

**B.    Lack of Probable Cause**

"A malicious prosecution plaintiff carries the burden of disproving probable cause." *Pettit v. Maxwell*, 509 S.W.3d 542, 547 (Tex. App.—El Paso 2016, no pet.). Probable cause is the "existence of such facts and circumstances as would excite belief in a reasonable mind, acting on the facts within the knowledge of the prosecutor [complainant], that the person charged was guilty of the crime for which he was prosecuted." *Richey*, 952 S.W.2d at 517 (quoting *Akin v. Dahl*, 661 S.W.2d 917, 921 (Tex. 1983)). The probable-cause element inquires "whether a reasonable person would believe that a crime had been committed given the facts as the complainant honestly and reasonably believed them to be before the criminal proceedings were instituted." *Id.*

"There is an initial presumption in malicious prosecution actions that the defendant acted reasonably and in good faith and had probable cause to initiate the proceedings." *Id.* The presumption disappears if a plaintiff produces evidence that the motives, grounds,

9

beliefs, and other evidence upon which the defendant acted did not constitute probable cause. *Id.* The burden then shifts to the defendant to offer proof of probable cause. *Id.*

**C.     Theft**

Under the Texas Penal Code, a person commits the offense of theft "if he unlawfully appropriates property with intent to deprive the owner of property." TEX. PENAL CODE ANN. § 31.03(a). As relevant to this case, "[a]ppropriation of property is unlawful if . . . it is without the owner's effective consent . . . ." *Id.* § 31.03(b). "Appropriate" means: "(A) to bring about a transfer or purported transfer of title to or other nonpossessory interest in property, whether to the actor or another; or (B) to acquire or otherwise exercise control over property other than real property." *Id.* § 31.01(4).

**D.     Discussion**

Appellant is required to establish the absence of probable cause. *See Pettit*, 509 S.W.3d at 547. In the trial court, appellant argued there was an absence of probable cause because: (1) "there is clear and specific evidence that the motives, grounds, beliefs, character, and reputation of Mulvey were other than merely acting reasonably and in good faith"; (2) "prosecutors dismissed the charges against him in the course of the examining trial"; and (3) appellees' "intentional suppression" of appellant's exculpatory intent along with "the improbable nature of their false assumptions" is indicative of the lack of probable cause. We address each argument in turn.

**1.     The burden shifted to appellees to prove probable cause**

Regarding his first argument, we assume, but do not decide, that appellant

produced evidence that the motives, grounds, beliefs, and other evidence upon which appellees acted did not constitute probable cause. *See Richey*, 952 S.W.2d at 517. Consequently, the burden then shifted to appellees to offer proof of probable cause. *Id.*

"The probable cause inquiry asks only whether the complainant reasonably believed that the elements of a crime had been committed based on the information available to the complainant before criminal proceedings began." *Id.* at 519. At the time Mulvey reported the alleged crime to the Texas Rangers, he relied on KM&K's financial examination of the parish's financial records. To determine whether appellant was using parish funds for personal purchases, KM&K analyzed bank statements, Sunday collection records, invoices, and credit card receipts as provided by the parish bookkeeper.[2] KM&K "identified $203,276.56 as the amount that is owed to the Church as a result of the forensic examination." KM&K indicated that appellant would mark specific items for the parish to pay as "parish expenses," but these "parish expenses" were actually appellant's personal expenses. According to Mulvey, this practice resulted in "numerous deviations from diocesan policies and the normal practices for parish finances." Some of these expenses were: (1) $5,000 worth of reimbursements to appellant for donations; (2) $12,800 in bonuses in 2014 and 2015 paid to appellant, which appellant did not report to the IRS; (3) over $3,800 for a home entertainment theater system; (4) $2,700 for sound equipment, which was paid to appellant twice; (5) $350 for "surgery for Laura Pol"; (6) $2,500 to a spa in Arlington that appellant noted was for a "nativity"; (7) $4,500 to the

---

[2] These documents amounted to over 348 pages.

same spa that appellant noted was for a "desk"; (8) over $2,000 for an Apple online purchase; (9) over $8,000 in duplicated payments made by the parish that appellant did not refund back to the parish; (10) auto repair charges for vehicles that were not appellant's; (11) over $137,953 in charges to merchants outside of Port Aransas for home improvement, movies and entertainment, groceries, clothes, and food; (12) over $11,000 in foreign travel and airport parking; and (13) numerous other charges on the parish's credit card in the areas of Port Aransas and Arlington incurred by a third party.

Mulvey arranged a meeting "to give [appellant] an opportunity to explain or respond to the findings in the report"; however, appellant "failed to provide a satisfactory explanation of the financial anomalies and irregularities set out in the report." Nonetheless, Mulvey directed appellant to schedule a meeting with members of the parish financial council that needed to be in attendance. Appellant did not assemble members of the financial council as directed, and the meeting did not occur. As a result, Mulvey informed appellant that it was "now necessary that [he] review more in depth and consult on the serious issues that the audit revealed." Mulvey requested further investigation for transactions from January 1, 2017, through September 27, 2017 and removed appellant from his position as parochial administrator.

The evidence before Mulvey at the time he reported the alleged crime to the Texas Rangers was: KM&K's extensive financial examination report; appellant's statements that some of the charges were for personal expenses as he believed priests made meager salaries and that it was his prerogative to determine how parish funds should be spent;

12

appellant's failure to assemble a meeting with financial officers despite the directive; and appellant's removal from his position as patriarchal administer of the parish. Whether some of the allegations provided to the Diocese may or may not have later been discredited is irrelevant to the information available to Mulvey *at the time* he reported the possible crime to the Texas Rangers. *See Pettit*, 509 S.W.3d at 549 ("[T]he issue of what the prosecutor later knew or believed is irrelevant to . . . probable cause to report the alleged crime in the first place."). According to Mulvey, he "had a good faith and reasonable belief that Parish funds had been improperly diverted, appropriated or taken as set out in the [r]eport and that a crime may have been committed." We conclude that the evidence established that Mulvey reasonably believed that the elements of crime had been committed at the time he reported the alleged theft to the Texas Rangers. *See id.* at 548; *see also Vu v. Tran*, No. 02-21-00059-CV, 2021 WL 3679245, *7 (Tex. App.—Fort Worth Aug. 19, 2021, no pet.) (mem. op.) ("The probable-cause inquiry is concerned only with whether the complainant reasonably believed that the elements of a crime had been committed based on the information available to the complainant before criminal proceedings began."); *Castille v. Port Arthur Patrolmen's Hunting Club*, No. 09-18-00395-CV, 2020 WL 1879475, at *6 (Tex. App.—Beaumont Apr. 16, 2020, pet. denied) (mem. op.) ("Because we evaluate probable cause from the perspective of the person who made the report to law enforcement and at the time the report was made, subsequent events that may tend to show whether the act of reporting was correct or incorrect are immaterial to the probable cause evaluation.").

13

### 2. Probable cause cannot be overcome by dismissed charges

Appellant points to the dismissed charges against him during the course of the examining trial to disprove probable cause. However, the probable cause element cannot be met by evidence of a subsequent resolution of the criminal charges; instead, the issue focuses on whether, at the time of the accusation, a reasonable person would believe that a crime had been committed. *Pettit*, 509 S.W.3d at 547 (providing that probable cause is measured when the defendant reports the case to the authorities, not later when the case is investigated, tried, or dismissed). Therefore, this does not constitute prima facie evidence of lack of probable cause.

### 3. Probable cause cannot be overcome by the failure to disclose all relevant facts

Appellant further asserts that appellees' alleged failure to disclose information to the Texas Rangers that was favorable to appellant is evidence of the lack of probable cause. Yet, the supreme court rejected the notion that probable cause can be negated by the failure to make a full and fair disclosure. *See Richey*, 952 S.W.2d at 519. Whether appellees "failed to fully disclose all relevant information to the [Texas Rangers] is therefore immaterial to the probable-cause inquiry." *Id.*

### 4. Appellant's affidavit

In his affidavit, appellant stated that he did not continuously steal or defraud the Diocese out of money because "the bank account at issue" in the KM&K report consisted of "parish funds, owned by the Parish; they were not Diocesan funds." He further explained that because he was a signator to the parish account with the authority to

14

consent to payments, it was impossible for the parish to have been deprived of funds. Additionally, he stated that it was *his* "custom and practice to charge matters on [his] personal credit card [that] included both personal expenses and parish-related expenses," and he would "periodically" identify those expenses at his discretion. Appellant stated:

> I am not suggesting that everything I did as pastor of [the parish] was entirely error-free, subject to being nit-picked, or perhaps subject to a differen[ce] of opinion or judgment call since reasonable minds can differ, but I can unequivocally state that I never committed "theft" with respect to either Diocesan funds or Parish funds . . . with the intent to deprive the [Diocese] of any property.

Again, we evaluate probable cause from Mulvey's point of view at the time he reported the accusation—we do not account for appellant's subjective beliefs. *See Pettit*, 509 S.W.3d at 548. Therefore, these statements do not establish the lack of probable cause at the time Mulvey reported the accusation.

## E. Conclusion

Because appellant failed to produce evidence demonstrating a lack of probable cause at the time Mulvey reported the alleged crime to the Texas Rangers, the trial court did not err by concluding that appellant failed to establish a prima facie case of malicious prosecution. *See ITT Consumer Fin. Corp. v. Tovar*, 932 S.W.2d 147, 156 (Tex. App.—El Paso 1996, writ denied) (providing that malicious prosecution actions are disfavored by the law because public policy favors the reporting of a crime). We overrule appellant's first three issues.

## IV. WAIVER

By his fourth issue, appellant argues that the trial court abused its discretion in denying his request for discovery under § 27.006(b).

15

**A.       Applicable Law & Standard of Review**

The filing of a motion to dismiss under § 27.003 stays "all discovery in the legal action" until the trial court rules on the motion. TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(c). "On a motion by a party or on the court's own motion and on a showing of good cause, the court may allow specified and limited discovery relevant to the motion [to dismiss." *Id.* § 27.006(b). Some merits-based discovery may be relevant to the extent that it seeks information to assist the non-movant to meet its prima facie burden. *See Serafine v. Blunt*, 466 S.W.3d 352, 357–58 (Tex. App.—Austin 2015, no pet.). But such merits-based discovery must still be "specified and limited" because a prima facie standard generally "requires only the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d at 223 (internal citation omitted). We review the trial court's actions denying discovery under the TCPA for an abuse of discretion. *Walker v. Schion*, 420 S.W.3d 454, 458 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

**B.       Discussion**

In his discovery motion, appellant requested discovery contingent on whether the trial court "is of the mind that there are evidentiary gaps in these matters *and* that they are outcome determinative." He requested: (1) a deposition of a corporate representative of Value Bank with subpoena duces tecum requesting numerous documents and bank policies; (2) Nguyen's deposition if the trial court found his deposition relevant; (3) deposition of the Diocesan accountant and contents of the financial statement of the

16

Diocese; and (4) deposition of Ranger Lankford to determine what he relied upon in preparing his affidavit that led to appellant's arrest. Appellant concludes that the trial court abused its discretion in denying his motion for relief under § 27.006(b), which he filed at 4:37 p.m. the night before the hearing, and the extent of his argument is as follows: "Good cause was supported by the affidavit of Greenwell. There was no contradicting evidence. The trial court, however, denied all such relief."[3]

First, Appellant did not articulate how he met the requirement of "good cause." *See Cruz v. Van Sickle*, 452 S.W.3d 503, 512 (Tex. App.—Dallas 2014, pet. denied) (holding that the appellant waived his § 27.006(b) discovery complaint when his argument consisted of a total of three sentences, and he failed to present any discussion or analysis). Second, appellant does not explain—or even address—how the requested discovery was "outcome determinative," or how it would assist him to meet his prima facie burden. *See In re SSCP Mgmt., Inc.*, 573 S.W.3d 464, 472–73 (Tex. App.—Fort Worth 2019, orig. proceeding) (providing that any merit-based discovery must meet the statutory requirement for "specific" and "limited" because a prima facie standard generally requires only the minimum quantum of evidence); *see also In re SPEX Grp. US LLC*, No. 05-18-00208-CV, 2018 WL 1312407, at *4 (Tex. App.—Dallas Mar. 14, 2018, orig. proceeding, mand. Dism'd) (mem. op.) ("A party would, therefore, not need multiple or lengthy depositions or voluminous written discovery in order to meet the low threshold to present

---

[3] Greenwell's affidavit merely recites the same: "it is my opinion that good cause exists under [§ 27.006(b)] to engage in the following specified and limited discovery relevant to the motion to dismiss and [appellant's] claim of malicious prosecution . . . ."

a prima facie case."). Finally, appellant does not discuss the propriety of the trial court's ruling under § 27.006(b) and instead states that the trial court abused its discretion because "there was no contradicting evidence." On this record, we cannot find that the trial court abused its discretion by limiting the discovery as it did. *See Walker*, 420 S.W.3d at 458. Accordingly, we overrule appellant's fourth issue.

## V. ATTORNEY'S FEES

By his fifth issue, appellant argues the trial court denied his right to trial by jury on the amount of attorney's fees, and he relies on our previous disposition in *Pisharodi v. Columbia Valley Healthcare Sys., L.P.*, 622 S.W.3d 74, 91 (Tex. App.—Corpus Christi–Edinburg 2020, no pet.). In *Pisharodi*, the trial court granted the hospital's TCPA motion to dismiss, and appellant was ordered to pay the hospital's attorney's fees. We held that "the trial court abused its discretion in denying [appellant's] request for a jury trial on the issue of the amount of reasonable attorney's fees," and we remanded the cause to the trial court for a new trial on that issue. *Id.* at 90. We concluded that § 27.009 did "not contain language prohibiting the parties from having a jury determine the reasonableness of the amount of attorney's fees to award" and "reasonableness remain[ed] a fact issue that a jury, upon proper request, may resolve." *Id.* Similar to *Pisharodi*, appellant requested a jury trial on the issue of attorney's fees, which the trial court denied. Therefore, pursuant to *Pisharodi*, we sustain appellant's fifth issue, and we do not address appellant's subsequent issue of whether the assessed fees were unreasonable. *See* TEX. R. APP. P. 47.1.

18

## VI.    CONSTITUTIONALITY

By his last issue, appellant asserts that the "'attorney's fees regime' of [§] 27.009 is constitutionally infirm on its face because it violates both the open courts provision and the equal protection provisions of the Texas Constitution" and the United States Constitution. *See* TEX. CONST. art. V, § 13 ("All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law."); TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a) ("[T]he court shall award to the moving party . . . court costs and reasonable attorney's fees incurred in defending against the legal action" and may "award to the moving party sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions.").

Our sister courts have decided this very issue, and we find their authority persuasive. *See Gensetix, Inc. v. Baylor Coll. of Med.*, 616 S.W.3d 630, 641 (Tex. App.—Houston [14th Dist.] 2020, pet. dism'd) (holding the TCPA's fee-shifting provision does not violate the open-courts provision); *see also Mem'l Hermann Health Sys. v. Khalil*, No. 01-16-00512-CV, 2017 WL 3389645, at *16 (Tex. App.—Houston [1st Dist.] Aug. 8, 2017, pet. denied) (mem. op.) (same). In *Gensetix*, the appellate court relied on *Khalil* and noted that the TCPA's fee-shifting provision "did not act as a barrier to a party's right to petition for redress." 616 S.W.3d at 650. The court considered "the TCPA's express purpose to balance protections for persons exercising their constitutional rights of expression and association with protections for persons filing meritorious lawsuits for demonstrable

19

injury." *Id.*; *see* TEX. CIV. PRAC. & REM. CODE ANN. § 27.002.

We similarly note that the TCPA has provisions to limit the impact of attorney's fees. *See Gensetix*, 616 S.W.3d at 650. Notably, attorney's fees "are not imposed on parties who meet the burden placed on them under the TCPA, of establishing by 'clear and specific evidence' the elements of their prima facie case to avoid dismissal." *Id.*; *see* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c). "The fee provision in the TCPA shifts litigation costs from the prevailing party to the party who failed to meet its burden." *Gensetix*, 616 S.W.3d at 650. Therefore, we hold that the TCPA "do[es] not create an impermissible pay-to-play barrier to the courts; the awards shift litigation costs after resolution of a claim." *Id.* Accordingly, we overrule appellant's seventh issue challenging the constitutionality of the attorney's fees provisions of the TCPA.

## VII. CONCLUSION

We affirm the trial court's granting of appellees' TCPA motions to dismiss. We reverse the trial court's award of attorney's fees, and we remand the amount of fees on the issue of reasonableness for a jury trial.

JAIME TIJERINA
Justice

Delivered and filed on the
19th day of May, 2022.

20