## REED v. LINDLEY. (No. 9775.)

(Court of Civil Appeals of Texas. Fort Worth. March 11, 1922.)

**1. Malicious prosecution ☞72(1) — Special charge held improperly refused under evidence.**

In action for malicious prosecution and slander, *held*, that the court erred, under the evidence, in refusing to give a special instruction to the effect that, if the jury believed that the plaintiff sought to be prosecuted in order to have a pretext for a damage suit, and that in furtherance thereof he wrote threatening letters and made threats against the defendant, and did other things thereby intending to engender in defendant's mind the belief that he had burned the defendant's house and barn, then they should find for defendant.

**2. Malicious prosecution ☞56—Plaintiff must show his innocence.**

A plaintiff in a suit for malicious prosecution must show that he is not guilty of the charge made against him.

**3. Trial ☞296(2)—Instruction held erroneous and misleading, and not cured by another instruction.**

A phrase in an instruction in a malicious prosecution suit that it was immaterial whether plaintiff was guilty or innocent of the charge was erroneous and misleading, and the prejudice was not materially lessened by another instruction that the burden was upon the plaintiff to prove that he was not guilty.

**4. Malicious prosecution ☞72(4)—Instruction on malice held misleading.**

In malicious prosecution, an instruction that "malice, as used in the law and in this charge, does not mean personal spite or ill will, and the allegations that an act was maliciously done does not mean that it was done for that reason or in such spirit, but it does mean an unlawful act," etc., was misleading, and liable to give the jury the impression that personal spite or ill will was to be wholly disregarded in considering whether defendant had been actuated by malice in instituting the prosecution.

**5. Malicious prosecution ☞27—"Malice" defined.**

Spite or ill will, if the motive for a prosecution, coupled with a want of probable cause, is malice, warranting recovery of damages; but malice also may be inferred from a wrongful act done in reckless disregard of the rights of another, and in a spirit of indifference as to whether such other party is injured or not, even though there be no personal spite or ill will.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Malice.]

**6. Malicious prosecution ☞71(3)—Malice for jury.**

In a malicious prosecution suit, malice is a fact for the jury.

**7. Malicious prosecution ☞60(3)—Uncomplimentary expressions admissible on issue of malice.**

In malicious prosecution suit, uncomplimentary expressions made by defendant to the officer before whom he made the complaint and to others relating to the plaintiff were relevant to and admissible upon the issue of malice.

**8. Trial ☞330(4)—Recovery may be had in one verdict for damages for malicious prosecution, slander, and libel.**

When malicious prosecution and slander and libel all arise out of the same transaction, they may all be considered by the jury and recompensed by a single verdict.

**9. Malicious prosecution ☞16 — Elements stated.**

To support an action for malicious criminal prosecution, the plaintiff must prove the fact of the prosecution was without probable cause, and with malice, and that the defendant was the prosecutor, or that he instigated its commencement, and that it finally terminated in the plaintiff's acquittal.

**10. Malicious prosecution ☞56 — Burden on plaintiff to prove essential elements.**

In suit for malicious prosecution, burden of proof in the first instance is upon the plaintiff to prove all the essential facts and elements, and, if he fails to prove any one of them, the defendant has no occasion to offer any evidence in his defense.

**11. Malicious prosecution ☞38—Action not favored.**

The action for malicious prosecution is not favored in law, and recovery will only be allowed when the requirements limiting it have been fully complied with.

**12. Malicious prosecution ☞71(1)—Facts for jury.**

While it is the function of the jury to determine what the facts are in a suit for malicious prosecution, it is for the court to declare the legal effect of the facts found.

**13. Evidence ☞5(2) — Common knowledge that motive diligently sought in search for unknown criminal.**

It is common knowledge that in the search for an unknown criminal a motive for the crime is diligently sought.

**14. Malicious prosecution ☞20 — Probable cause held to appear as matter of law.**

In action for damages for malicious prosecution and slander, where plaintiff was charged with burning defendant's house and barn, facts and information as to plaintiff's threats communicated to defendant *held* to show, as a mat-

ter of law, that defendant had probable cause for instituting the prosecution.

Appeal from District Court, Montague County; C. R. Pearman, Judge.

Action by Tom Lindley against W. L. Reed. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

W. O. Davis, of Gainesville, and Donald & Donald, of Bowie, for appellant.

Alcorn & Jameson, of Montague, and Homer B. Latham, of Bowie, for appellee.

CONNER, C. J. During the night of April 21, 1920, a residence and barn owned by the appellant, Reed, were destroyed by fire. On the next day, April 22, 1920, appellant filed a complaint before Henry M. Burns, justice of the peace for precinct No. 7 of Montague county, charging appellee, Tom Lindley, with the burning. A warrant was issued upon the complaint, under which Lindley was arrested in Foard county and brought to Montague county, and at an examining trial had upon said charge on April 27, 1920, Lindley was discharged, and has not since been indicted. Lindley brought this suit against W. L. Reed in the district court of Montague county for malicious prosecution and slander, seeking to recover actual and exemplary damages. At a trial had on the 3d day of February, 1921, Lindley recovered judgment for $800 actual damages, and this appeal is from that judgment.

The evidence, briefly stated, in substance furnishes but little, if any, reason to doubt that the fire was incendiary in its origin. It further appears that on the 17th day of March preceding the fire Lindley, who had theretofore married Gertrude Reed, daughter of appellant, W. L. Reed, deserted her and their two children without cause. Prior to 1920 Lindley and family lived on farms belonging to Mr. Reed, but at the time he abandoned his wife and children he was living on a rented place in Montague county not belonging to Reed. Will Benson, one of the witnesses for the defendant, testified that Lindley said that the reason for his moving down there was that the "old man" (Reed) had promised them a place, and he had moved to the rented place for "aggravation." After said abandonment, and prior to the fire, appellee's wife, Gertrude, procured a divorce from appellee on the ground of having been falsely accused by her husband of a want of marital fidelity, and she testified on the trial that before appellee had abandoned his family he frequently expressed animosity against her father, and made threats of serious injury against him, and that these threats had been communicated to her father after the abandonment, but before the fire. Mrs. Lindley testified that at the time appellee abandoned her and their two infant children, aged two and three years, re-

spectively, he carried with him his clothes, including two pair of work shoes; that the right heel of his work shoe was run down, and would show in his tracks.

Appellee in his accusation of his wife's infidelity named no person, nor does it appear that he made any answer to her suit for divorce.

On April 14, 1920, Lindley, at Foard City, Foard county, wrote and mailed the following letter addressed to "Master J. B. Lindley, Star Route, Montague, Texas, % Reed":

"Foard City, Texas, 4—14—20.
"Little J. B. Lindley—Dear, Dear Little Fellow: Papa is now fixing to take a hike some place across the other side. I hope you will some day grow to be a man. Always live single. Papa has studied over the way your mother has gone until he is almost crazy. Now, son, my dear little boy, papa hates to leave you to battle in the world, though papa is a man of virtue. Papa loved mama until she went wrong. Papa still loves you, and papa will die that way. Now, son, papa in a few days will take this hike, and then papa will cross over the river. Papa has just got back from Wichita. Grandma don't know what I am here for and never will. Papa will have revenge if it takes half of Montague and Belcher. Papa is fixed now for a big Bear for the edges of hell. Good-bye, son.                     Papa.
"Papa hears about you every day or so."

The testimony indicates that the appellant was unable to read writing, and that the letter was delivered to him and thereafter read to him by Mrs. Reed, his wife. The little boy to whom the letter was addressed was unable to read or write. The letter caused much uneasiness in the mind of Mr. Reed, and he went to the county attorney and tried to have Lindley put under a peace bond, but he was informed this could not be done. While on the stand Lindley admitted that he wrote and mailed the above letter, and directed it to Reed because he did not know where little J. B. was; that he did not know whether little J. B. could read or write. He denied that in writing the letter he desired to scare old man Reed, testifying that he did not have in mind Reed when he said he would have revenge if it took half of Montague and Belcher, but that he was going to have revenge on another party, but he did not name such other party; that he did not remember what river he was going to cross, but it was not Red river; that he had not been to Wichita Falls and did not know why he put that in the letter.

Mrs. Ruby Reed, appellant's widowed daughter-in-law, testified that she passed through Nocona on the 18th of April, 1920, together with two of her cousins and two of her children; that as she passed through Nocona she saw Tom Lindley sitting on some trucks at the depot, and that she so informed appellant, Reed, on the following Monday, before the fire. Upon being informed of the

fire, appellant called up the sheriff, and told him that he believed that appellee, Lindley, was the person who burned his house and barn, and requested the sheriff to come over at once so that they might catch him. The sheriff, however, did not go until about 10 or 11 o'clock the next morning. Appellant then went to Nocona and saw the constable or city marshal,- and endeavored to get that officer to take the train going in the direction of Wichita Falls and Foard City to see if Lindley was on it, but the officer said he did not know Lindley, and suggested that appellant himself take the train. He did go, and, together with the conductor and one of the trainmen, went through the train and inspected all parts in the effort to discover Lindley, as he expected he would do, but in which he failed. Appellant then returned to his home, and upon .further investigation found tracks made by a No. 5 or 6 size shoe, the size worn by appellee, with a run-down heel, going toward and returning from the burned house and barn.

One R. B. Price also testified to the effect that after the fire he had occasion to go, and did go, to Foard City, where he met appellee, and.that in a conversation there had appellee stated that:

"I knew it (the house) was going to be burned * * * but I didn't burn it. He said they identified the shoe tracks. That he left his shoes there, and that the man who burned the house wore them."

Appellee, by a number of witnesses living at Foard City, seemed to establish with reasonable certainty that he was in Foard City during the day preceding, and during the night of the fire, and on the following morning, and hence that he could not have been at the scene of the fire, and, further that appellant had been so informed before the service of the warrant of arrest, but notwithstanding that appellant insisted upon its execution. He also introduced a number of witnesses who testified to the effect that they knew his reputation while living in Montague county, and that it was good as a peaceable, law-abiding citizen. Such other parts of the testimony as are deemed material will. be stated in connection with the topics discussed.

The court charged the jury that before they could find for the plaintiff he must show by a preponderance of the evidence: First, that the defendant, Reed, in instituting the prosecution against the plaintiff in the justice court, "was instigated by malice, and that he acted in said matter without probable cause for believing the plaintiff, Tom Lindley, guilty of the charge preferred against him;" second, "that the alleged charge of arson made by defendant against plaintiff was not true;" third, "that the plaintiff has been damaged by reason of said prosecution."

Probable cause and malice were defined, and the court, in the eighth paragraph of his charge, gave the following instruction, to which error is assigned in this court, to wit:

"It is immaterial in this case whether the plaintiff was guilty or innocent of the charge of arson. If you believe plaintiff innocent of the crime, but believe that defendant had reasonable grounds of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the plaintiff was guilty of the offense, then you will find for the defendant."

Error is also assigned to the refusal of the court to give a special instruction to the effect that, if the jury believed from the evidence that the plaintiff, Lindley sought to be prosecuted in order to have a pretext for a damage suit, and that in furtherance thereof· he wrote threatening letters and made threats against the defendant, and did other things thereby intending to engender in defendant's mind the belief that he (plaintiff) had burned the defendant's house and barn, that then they should find for defendant.

[1-3] A majority, consisting of ·Justices DUNKLIN and BUCK, are of the opinion that the special charge mentioned above should have been given, it being their view that the evidence raised the issue, and that, under the rule announced in the McGlamory and other familiar cases following it, appellant was entitled to have the issue presented to the jury for determination. We are all agreed, however, that paragraph 8 of the court's charge was erroneous, and that the error is one which authorizes a reversal of the judgment. All authorities on the subject agree to the proposition that a plaintiff in a suit for malicious prosecution must show that he is not guilty of the charge made against him.. It was not true, therefore, as the court in effect charged in said paragraph 8 that it was immaterial whether the plaintiff was guilty of·the charge of arson. It is true that in a previous part of the charge, as we have already shown, the jury was instructed that before the plaintiff could recover he must show by a preponderance of the evidence that the charge of arson made against him "was not true." But the two read together presented a conflict that, to say the least, was confusing to the jury. It cannot be said with certainty that the latter expression in the court's charge, to the effect that plaintiff's guilt of the charge made against him was immaterial, did not in the minds of the jury neutralize or materially lessen the force and effect of the former instruction that the burden was upon the plaintiff to prove that he was not guilty. See Ry. Co. v. Sage, 98 Tex. 438, 84 S. W. 814; Peden v. Jaimes (Tex. Com. App.) 208 S. W. 898; Weisner v. M., K. & T. Ry. Co. (Tex. Com. App.) 207 S. W. 904; H. E. & W. T. Ry. Co. v. De Walt, 96 Tex. 121, 70 S. W. 531, 97 Am. St. Rep. 877.

[4-7] In view of another trial, we will also briefly notice an error in the court's definition of malice. He defined malice thus:

"Malice as used in law and in this charge does not mean personal spite or ill will, and the allegations that an act was maliciously done does not mean that it was done for that reason, or in such spirit, but it does mean an unlawful act, done in reckless disregard of the rights of another and in a spirit of indifference as to whether such other party is injured or not; when an act is done in that spirit and with such malice it is said in law to be done maliciously, or upon legal malice."

As worded, we think the charge misleading. What the able judge had in mind doubtless was that malice did not necessarily mean spite or ill will, but, as worded, the jury were liable to receive the impression that personal spite or ill will was to be wholly disregarded in considering whether the defendant had been actuated by malice in instituting the prosecution. This view is erroneous. Personal spite or ill will, if any, when proven, is relevant to that issue, and proper for the consideration of a jury in determining whether or not malice existed. If it did exist, and was the motive for the prosecution, and is found to have been coupled with a want of probable cause for the prosecution, it is sufficient. Malice also may be inferred from a wrongful act done in reckless disregard of the rights of another, and in a spirit of indifference as to whether such other party is injured or not, even though there be no personal spite or ill will, in either case it being for the determination of the jury whether malice in fact existed. See 18 R. C. L. p. 28, § 16 et seq. The defendant's uncomplimentary expressions to the officer before whom he made the complaint and to others relating to the plaintiff was therefore relevant to and admissible upon the issue of malice, to be considered by the jury for the purpose of determining whether they were the natural results of a feeling of outrage or whether they indicated that spirit of malevolence and evil purpose contemplated by the term malice as used in the legal definition of that term.

[8] In view of another trial, and in view of the defendant's demurrers, we will also add that a number of authorities seem to support the proposition that, when a malicious prosecution, slander, or libel all arise out of the same transaction, they may all be considered by the jury, and recompensed by a single verdict. See Williams v. Planten Ins. Co., 57 Miss. 759, 34 Am. Rep. 494; Neil v. Thorn, 88 N. Y. 270; Boeger v. Langenberg, 97 Mo. 390, 11 S. W. 223, 10 Am. St. Rep. 322; Jarnigan v. Fleming, 43 Miss. 710, 5 Am. Rep. 514; Sheldan v. Carpenter, 4 N. Y. 575, 51 Am. Dec. 301.

[9, 10] The majority, composed of the writer and Mr. Justice DUNKLIN, are of the further opinion that under the circumstances of this case the verdict and judgment is not supported on the issue of probable cause. To support an action for malicious criminal prosecution, the plaintiff must prove the fact of the prosecution, and that the defendant was the prosecutor or that he instigated its commencement, and that it finally terminated in the plaintiff's acquittal. He must also prove that the charge preferred against him was unfounded, and that it was made without probable cause, and that defendant in making or instigating it was actuated by malice. Proof of these several facts is indispensable to support the declaration, and clearly the burden of proof in the first instance is upon the plaintiff to make out his case, and, if he fails to do so in any one of these particulars, the defendant has no occasion to offer any evidence in his defense. Hurlbut v. Boaz, 4 Tex. Civ. App. 371, 23 S. W. 446; Ramsey v. Arrott, 64 Tex. 320; and numerous other authorities that might be cited.

[11] The reason for such strictness in proof is indicated by the following quotation from 18 R. C. L. p. 11, § 2:

"The action for malicious prosecution is not favored in law, and hence has been hedged about by limitations more stringent than those in the case of almost any other act causing damage to another and the courts have allowed recovery only when the requirements limiting it have been fully complied with. The disfavor with which the action is looked upon is especially marked in cases where the suit is being brought for the institution of criminal proceedings against the plaintiff, as public policy favors the exposure of crime, which a recovery against a prosecutor obviously tends to discourage."

Numerous authorities are cited in a note to the quotation made, and we think the soundness of the observations made in the quotation will be accepted without further discussion. It is to be noted that by all of the authorities a want of probable cause for the institution of the prosecution must be proven, and the court in this case clearly so charged the jury. See numerous Texas cases cited in 12 Encyclopedic Digest of Texas Reports, p. 59, col. 2.

In a note to the case of Michael v. Matson, 81 Kan. 360, 105 Pac. 537, as published in L. R. A. 1915D, p. 5, it is said:

"The general rule of the common law, sustained by the overwhelming weight of authority, both in England and America, is that what facts, and whether particular facts, constitute probable cause, is always a question of law, which the judge must decide upon the facts found to exist in the particular case, and which it is error for him to submit to the decision of the jury."

[12] The author of the note cites a great number of cases from the English reports, the United States court decisions, and from nearly if not all of the states of the Union,

including Texas; the Texas cases cited being Landa v. Obert, 45 Tex. 539; Ramsey v. Arrott, 64 Tex. 320; G., C. & S. F. Ry. Co. v. James, 73 Tex. 12, 10 S. W. 744, 15 Am. St. Rep. 743. In reading the authorities we sometimes meet with the expression that the existence vel non of probable cause is a question for the determination of the jury, but the authorities cited clearly establish the rule, as we think, that, while it is the function of the jury to determine what the facts are, it is for the court to declare the legal effect of the facts found. In this case the evidence relating to the issue of plaintiff's guilt of the crime of arson, of which the defendant charged him, may be said to be conflicting.

[13,14] The plaintiff while a witness denied in effect that he wore run-down shoes; he denied that he had made threats against the defendant; he denied that he was in the town of Nocona, as testified to by the daughter-in-law of the defendant; and therefore these issues in the evidence were for the jury. But the evidence is undisputed that at and prior to the time the defendant made the complaint the defendant's daughter informed him of threats of personal injury. It is undisputed that the defendant's daughter-in-law had informed him that she had seen the plaintiff, Lindley, in the town of Nocona, but some six miles away. It is undisputed that the plaintiff wrote the letter to his little son that we have already quoted, and there is no proof in the record that prior to the burning the defendant and plaintiff had ever had any difficulty, or that the defendant at any time prior to the time of making the complaint gave expression to any ill will or hostility toward the plaintiff, nor is there proof that the defendant in making the complaint was actuated by any other motive than that of originating a prosecution against one whom he undoubtedly believed to be guilty of a serious crime; and it is common knowledge that, in the search for an unknown criminal, a motive therefor is diligently sought. As the facts, about which there is no conflict must have appeared to the defendant, the plaintiff, and the plaintiff, only, so far as the record shows, had a motive, purpose, or desire to burn the defendant's property. The plaintiff's letter to his little boy, directed in the care of the defendant, with the apparent purpose of having its contents come to his knowledge, would, as it seems to the majority, plainly justify a reasonably prudent man in believing that some serious injury was threatened, and such letter, coupled with threats that had been communicated to him by his daughter, and with the information that had also been communicated to him by his daughter-in-law that the plaintiff Lindley had been seen but a few days before the fire in the vicinity, and, in the entire absence, as we must infer, of evidence of any other person having a motive or desire to so injure the defendant, seems sufficient as a matter of law to the majority to amount to probable cause. For an exhaustive discussion of the subject, with abundant citations of authorities, see the case of Michael v. Matson, and notes thereto, cited above.

For the reasons stated, we conclude that the judgment should be reversed, and the cause remanded.

BUCK, J. I concur in the reversal and remanding of this cause, without concurring in certain of the statements contained in the opinion.