**BROOKSHIRE GROCERY CO. d/b/a Super 1 Food Store, Appellant,**

v.

**Kelley RICHEY, Appellee.**

No. 12–93–00013–CV.

Court of Appeals of Texas, Tyler.

April 25, 1995.

Rehearing Overruled June 14, 1995.

Molly H. Anderson, Dennis Black, Mike Hatchell, Tyler, for appellant.

Gregory Grajezyk, Longview, for appellee.

Before RAMEY, C.J., and HOLCOMB and HADDEN, JJ.

HADDEN, Justice.

This is a malicious prosecution case. Appellant, Brookshire Grocery Company ("Brookshire"), appeals from a judgment awarding Appellee, Kelley Richey ("Richey"), $18,400.00 in actual damages and $18,400.00 in exemplary damages. In seventeen points of error, Brookshire challenges the legal and factual sufficiency of the evidence, the court's charge, the exemplary damages award, and the award of pre-judgment interest. We will reverse and render.

On December 11, 1989, around 2:30 a.m., Richey entered a Brookshire Super 1 grocery store to purchase groceries. When he first entered the store, the night manager, Russell Farris ("Farris"), saw Richey take a package of cigarettes and place it in his shopping cart. A few minutes later, he saw Richey "twiddling" the cigarettes. When Farris made eye contact with Richey, Richey dropped the cigarettes back into the shopping cart. Minutes later, Farris saw Richey put the cigarettes in his coat pocket where they were then concealed.

Based upon his prior experience with such behavior, Farris continued to watch Richey as he shopped. When Richey approached

the check-out counter, Farris, who was standing about fifteen feet away in full view of Richey, saw him write a check ($51.75) and then sack his groceries.[1] However, when he went through the check-out, Richey did not pay for the cigarettes which were still concealed in his pocket. Before moving away from the counter, Richey stopped and pulled out a food carton and began to read the label for the next thirty seconds to two minutes. Farris felt that Richey was stalling and trying to figure out what to do. As Richey started toward the exit, Farris also headed toward the door with the intention of detaining Richey in the parking lot. Once again, Richey stopped near the exit by a charity bin, left his shopping cart, and got a sack. He walked down the baby food aisle and filled the sack with baby food, went back through the check-out counter, and paid cash ($8.89) for this purchase. Richey still did not pay for the cigarettes in his pocket. He returned to his shopping cart, placed the sack of baby food in the charity bin and exited the store.

Outside in the parking lot, Farris and a fellow employee,[2] stopped Richey and asked him if he had forgotten to pay for anything. Richey said "No." When Farris asked him about the cigarettes, Richey said that he had inadvertently put them in his pocket and offered to pay for them. In accordance with store policy, Farris did not accept payment. He requested that Richey accompany him into the store office, and Richey complied. The police were called. When the police officer arrived, Richey told him that he wanted to be sure that he put in his report that he made a contribution to the charity bin. The police officer filled out an incident report and gave Richey a citation for misdemeanor theft. Richey was not arrested. As he was leaving the store, Richey returned to the charity bin, removed the sack of baby food and took it to his car. Later that day, Farris signed a sworn complaint with the City Municipal Court charging Richey with theft under $20.00. TEX.PENAL CODE ANN. § 31.03(b)(1) (Vernon 1994).

At the municipal court trial, Richey never denied taking the cigarettes, but claimed that he had no intent to steal them. The jury found Richey not guilty. Thereafter, Richey sued Brookshire for malicious prosecution.

During the malicious prosecution trial, Richey again admitted to taking the merchandise without paying for it, but claimed that it was inadvertent. He contended that Brookshire did not have probable cause to file the action against him, that he had been treated unfairly by Brookshire, and that he suffered damages. At the close of the evidence, the trial judge denied Brookshire's motion for directed verdict, and submitted "Special Issue No. 2A" to the jury as follows:

**QUESTION NO. 2A**

Do you find that the Defendant did not have probable cause to file a criminal prosecution against Kelly Richey?

"PROBABLE CAUSE" is the existence of such facts and circumstances as would cause the belief, in a reasonable mind, acting on the facts within the knowledge of the complainant that the person charged was guilty of the crime for which he or she was prosecuted.

"THEFT"—A person commits theft if he unlawfully appropriates property with intent to deprive the owner of property.

Answer "Yes" or "No."

The jury's answer to this question was "Yes." Thereafter, the court overruled Brookshire's motion for judgment notwithstanding the verdict, and rendered judgment that Richey recover actual damages of $18,400.00, exemplary damages of $18,400.00, and pre-judgment and post-judgment interest. Hence, Brookshire appeals to this Court.

In its first point of error, Brookshire claims the trial court erred in denying its motion for directed verdict and overruling its motion for judgment notwithstanding the verdict because the evidence was legally in-

---

1. At Super 1 Food Stores, the customers sack their own groceries.

2. Farris testified that 1 in 40 shoplifting detentions result in violent confrontations. Farris was experienced in detaining suspected shoplifters and had encountered violent suspects in the past. To discourage such violence, it is Brookshire's policy to try to have more than one employee stop a shoplifter.

sufficient to support the jury's findings that Brookshire did not have probable cause to file a criminal prosecution against Richey.

■ Because of the inherent tendency of an action for malicious prosecution to stultify the reporting of crimes, it is not favored in the law. *Ada Oil Co. v. Dillaberry,* 440 S.W.2d 902 (Tex.Civ.App.—Houston [14th Dist.] 1969, writ dism'd w.o.j.). The unique character of this type of action is described in the court's holding in *Reed v. Lindley:*

> The action for malicious prosecution is not favored in law, and hence has been hedged about by limitations more stringent than those in the case of almost any other act causing damage to another and the courts have allowed recovery only when the requirements limiting it have been fully complied with. The disfavor with which the action is looked upon is especially marked in cases where the suit is being brought for the institution of criminal proceedings against the plaintiff, as public policy favors the exposure of crime, which a recovery against a prosecutor obviously tends to discourage.

*Reed v. Lindley,* 240 S.W. 348, 351 (Tex.Civ. App.—Fort Worth 1922, no writ). Recently, the Supreme Court has stated that "What is distinctive about malicious prosecution is that there is little room for error in applying the law. Even a small departure from the exact prerequisites for liability may threaten the delicate balance between protecting against wrongful prosecution and encouraging reporting of criminal conduct." *Browning–Ferris Industries, Inc. v. Lieck,* 881 S.W.2d 288 (Tex.1994). It is within this context that we address the issues in this case.

■ To encourage reporting of crimes, and to ensure that citizens who do so in good faith will not suffer for their actions, the plaintiff must prove several rigorous elements. *Parker v. Dallas Hunting & Fishing Club,* 463 S.W.2d 496, 499 (Tex.Civ.App.— Dallas 1971, no writ); *American Motors Finance Co. v. Cleckler,* 28 S.W.2d 274 (Tex. Civ.App.—Eastland 1930, no writ). Those elements are:

(1) the commencement of a criminal action against plaintiff;

(2) institution of the action by defendant;

(3) termination of the prosecution in plaintiff's favor;

(4) the absence of probable cause for filing of a criminal complaint;

(5) malice in filing the complaint; and

(6) damage to plaintiff.

*Coniglio v. Snyder,* 756 S.W.2d 743, 744 (Tex. App.—Corpus Christi 1988, writ denied). The failure of plaintiff to prove any one of the above elements is fatal to his case. We will deal first with element four, probable cause, for it will be dispositive of the case.

■ An action for malicious prosecution cannot be maintained without showing a want of probable cause. The definition of "probable cause" in the court's charge was correct. *Akin v. Dahl,* 661 S.W.2d 917, 921 (Tex.1983), *cert. denied,* 466 U.S. 938, 104 S.Ct. 1911, 80 L.Ed.2d 460 (1984). The question is not what the actual facts were, but what the complainant honestly believed them to be. *Coniglio,* 756 S.W.2d at 744.

■ In every malicious prosecution case there is, initially, a rebuttable presumption that a defendant acted in good faith and with probable cause. *Akin,* 661 S.W.2d at 920. When the facts which bear on probable cause are not in dispute, the issue of probable cause is a question of law to be decided by the court. *Montgomery Ward & Co. v. Kirkland,* 225 S.W.2d 906, 908 (Tex.Civ.App.— San Antonio 1949, writ ref'd n.r.e.).

■ An appellant challenging the legal sufficiency to support an adverse finding on an issue on which he did not have the burden of proof must demonstrate on appeal that no evidence supports the adverse finding. *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983); R.W. CALVERT, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 Tex.L.Rev. 361, 364–68 (1960). Our standard of review is to consider only the evidence and reasonable inferences which tend to support the jury finding and disregard all evidence and inferences to the contrary. *Davis v. City of San Antonio,* 752 S.W.2d 518, 522 (Tex.1988).

■ A "no evidence" point of error must be sustained when the record discloses one of

the following: (1) evidence of a vital fact is completely absent; (2) the court is barred by rules of law or evidence from giving weight to any evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *Juliette–Fowler Homes, Inc. v. Welch Assoc.*, 793 S.W.2d 660, 666 n. 9 (Tex.1990); R.W. CALVERT, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex.L.Rev. at 364–68.

■ If there is any evidence of probative force to support the finding, the point must be overruled and the finding upheld. *In re King's Estate*, 150 Tex. 662, 664, 244 S.W.2d 660, 661 (1951). However, if the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, it is no more than a scintilla and, in legal effect, no evidence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983). The test for the application of the no evidence/scintilla rule is that if reasonable minds cannot differ from the conclusion that the evidence offered to support the existence of a vital fact lacks probative force, it will be held to be the legal equivalent of no evidence. *Id.*

■ The "no evidence" inquiry in malicious prosecution cases is not whether, in actuality, the plaintiff was innocent, but whether the complaining party had reasonable grounds, from the facts known to him at the time, to believe that the accused was guilty. *Akin*, 661 S.W.2d at 920. This is because the person initiating a prosecution does not have the same information as all those who intimately know the alleged shoplifter, and because the complaining party does not have all the evidence that a jury can consider in a criminal jury trial. *Id.* Consequently, the standard of review must be applied to the circumstances as they existed prior to the time when the initiation of the prosecution began. *Parker*, 463 S.W.2d at 500.

■ After examining the entire record, we see no evidence to support the finding of lack of probable cause; at best, there exists only a scintilla of evidence to support the

finding. Richey contends that the following factors raise the issue of lack of probable cause:

(1) It was only a pack of cigarettes valued at $1.47.

(2) The cigarettes were first simply put in the shopping cart.

(3) Richey, at one point, knew he was being watched, but did not appear nervous.

(4) It is a smoker's habit to place cigarettes in one's pocket.

(5) Richey paid for $51.75 worth of groceries.

(6) After checking out, Richey perused the package label on an item purchased.

(7) On his way out of the store, Richey donated $8.89 worth of groceries to charity.

(8) Farris did not include some of the above information in his company report, nor in the police report.

Richey argues that the above factors would have put a reasonable and prudent store manager on notice of lack of intent.

The incident must be viewed, however, from the standpoint of a reasonable, prudent person under the circumstances with which Farris was faced. Farris was the manager of a large retail grocery. He knew that shoplifting was a large problem experienced by Brookshire stores. He knew that the number one item shoplifted at Brookshire stores is cigarettes, an item of small value, and that there is no typical profile of "shoplifters." Farris knew that people of all ages and economic background shoplift, and that shoplifters do illogical things. He knew that the best way to tell if someone is shoplifting is to observe their actions. He was acting under the policy of his employer, which stated that he was to detain a customer only if he was: (1) sure the shoplifter had concealed the merchandise; (2) sure the shoplifter still had the merchandise in his possession; and (3) sure that the shoplifter had the opportunity to pay for the concealed merchandise by passing through the check-out stand.

Viewing the facts in the light most favorable to the jury verdict, we fail to see how any of the above factors presented by Richey

could be any more than a scintilla of evidence showing a lack of probable cause. Rather, the overwhelming evidence is to the contrary. Richey admitted that the cigarettes which he picked up were placed in, and concealed, in his left coat pocket while shopping in the store, and that he did not pay for the cigarettes when he went through the check-out. These factors were observed by Farris prior to his detention of Richey. Further, Richey admitted under oath that probable cause existed and that his conduct would appear to another person to be shoplifting.

The record reflects the following exchange between Brookshire's counsel and Richey during cross-examination:

Q: I know you had no intent but yet from your actions it looks like somebody was actually shoplifting by picking up those cigarettes and concealing them, isn't that right?

A: That's right.

Q: I believe in that letter that your attorney offered in evidence written to Mr. Brookshire, was there some admission in there that it was a silly mistake?

A: Yes.

Q: So you are in fact—at least you are saying at least this much, that it was a mistake to put those cigarettes in your coat pocket?

A: Obviously so.

Q: And the reason why it was a mistake is because somebody could look at that and think you were in fact shoplifting based on what they observed about your conduct?

A: That's right.

Q: You picked the cigarettes up and put them in your coat pocket?

A: Uh-huh.

Q: Right?

A: Right.

Q: Let me ask you, is that the type of thing—if a person was to shoplift, would that be a normal place to put a pack of cigarettes?

A: I don't know, I assume it could, yeah.

Q: That makes sense doesn't it, if somebody shoplifts they will put it in a pocket or someplace where somebody can't see it?

A: Uh-huh.

Q: In a practical sense, you could have been found guilty of the charges?

A: Yes, that's possible.

Q: Are you claiming that Russell Farris didn't have a right to stop you outside the store and inquire as to the nature of that property?

A: No, he had the right to stop me.

Q: I believe you testified earlier that it was possible that the jury could have found you guilty in the criminal trial, is that correct?

A: Yes, that is correct.

■ Richey further argues that while his conduct would have caused a reasonable person to believe that he was shoplifting and that Brookshire had a right to detain him, Brookshire is liable for malicious prosecution because Richey never had the *intent* to steal the cigarettes. In support of this argument, Richey points to the testimony of his wife and friend about his good character, his own denials and Brookshire's failure to consider them, and the acquittal in the municipal court criminal proceedings.

These factors are not probative of probable cause at the time of the event, or lack thereof. *See Akin*, 661 S.W.2d at 920; *Reed*, 240 S.W. at 348. The test is not whether, in actuality, Richey was innocent, but whether Farris had reasonable grounds from the facts known to him at the time to believe that Richey was guilty. *Akin*, 661 S.W.2d at 920. The Supreme Court stated:

Events subsequent to the action ... and legal proceedings may tend to show whether the action of [the complainant] turned out to be correct or incorrect, but is [sic] not material to the beliefs and motives at the time the proceedings were instituted.... It is the events prior to the institution of the proceedings which must be examined, and only those events, to determine if the defendants had probable cause to act.

*Akin*, 661 S.W.2d at 920. Even an acquittal is not evidence of a lack of probable cause.

*Fisher v. Beach,* 671 S.W.2d 63, 66 (Tex. App.—Dallas 1984, no writ); *see also, Parker,* 463 S.W.2d at 500.

■ The material time frame for determination of probable cause ended when the offense of theft was completed. When each element of a crime has occurred, disregarding any subsequent events, the offense is complete. *Barnes v. State,* 824 S.W.2d 560, 562 (Tex.Cr.App.1991) (*en banc*); *see e.g., Barnes v. State,* 513 S.W.2d 850, 851 (Tex.Cr. App.1974) (taking was complete when appellant took possession and control of automobile even though he had not driven it away).

■ In the instant case, it would appear that the events bearing on probable cause were complete when Richey first went through the check-out procedure and failed to pay for the cigarettes. Subsequent events which may tend to show lack of intent on Richey's part is no evidence of lack of probable cause. No cases have been cited by Richey supporting his contention that Brookshire should have investigated Richey's denial of intent before signing the complaint, or should have dropped the charges after having received Richey's explanation in the letter by his lawyer. Once objective acts themselves justify a reasonable belief that a party had the intent to commit a crime, the complaining party does not have an obligation to confront the plaintiff and do further investigation into the *mens rea* or other possible defenses. *Coniglio,* 756 S.W.2d at 747; *Marathon Oil Co. v. Salazar,* 682 S.W.2d 624, 629 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). The complaining party has only the duty to state the objective facts known to him and does not himself have to investigate the state of mind or motive of the alleged perpetrator. *Thomas v. Cisneros,* 596 S.W.2d 313 (Tex.Civ.App.—Austin 1980, writ ref'd n.r.e.). It appears from the record that Richey was acquitted by the municipal court jury because he did not *intend* to shoplift, not because there was a lack of probable cause.

We therefore hold there was an absence of evidence showing a lack of probable cause, a vital element in this case. We further hold, from the record, that the evidence is so overwhelming to the contrary that probable cause was established as a matter of law. Point of error number one is *sustained.*

In view of our disposition of point one, we do not reach the remaining points of error. The judgment of the trial court is therefore **reversed and judgment is rendered that Appellee take nothing.**

Holcomb, J., dissents.

HOLCOMB, Justice.

I respectfully disagree with the majority opinion. I understand that malicious prosecution is not favored in law. *Montgomery Ward & Co. v. Kirkland,* 225 S.W.2d 906, 909 (Tex.Civ.App.—San Antonio 1949, writ ref'd. n.r.e.). As so amply stated in *Browning–Ferris Industries, Inc., v. Lieck,* "It is important that every citizen should be protected against malicious prosecutions and it is equally important that crimes should be punished." *Browning–Ferris Industries, Inc., v. Lieck,* 881 S.W.2d 288, 290 (Tex.1994). Society must have sufficient means to prosecute wrong doers. By the same token, a citizen must be protected against oppressive litigation for unjustified criminal prosecution that results in pecuniary loss and loss of reputation. *Id.*

The majority held that they saw "no evidence to support the finding of lack of probable cause; [or] at best, there exists only a scintilla of evidence to support the finding." In reviewing a "no evidence point," this Court must consider all of the evidence and reasonable inferences which tend to support the jury's findings and disregard all evidence and inferences to the contrary. *Lewelling v. Lewelling,* 796 S.W.2d 164, 166 (Tex.1990); *In re Kings Estate,* 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). The point must be overruled if there is any evidence of probative force to support the finding. CALVERT, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 Tex.L.Rev. 361 (1960).

A complainant has probable cause if the facts and circumstances that are within the knowledge of the complainant gives credence to a reasonable belief that the accused was guilty of the crime for which he was prosecuted. *Akin v. Dahl,* 661 S.W.2d 917, 920–21 (Tex.1983), *cert. denied,* 466 U.S. 938, 104

S.Ct. 1911, 80 L.Ed.2d 460 (1984). This is an objective standard that must be applied at the inception of the prosecution and cannot depend on the ultimate guilt or innocence of the accused. *Id.* at 920. Therefore, for Richey to prove that Brookshire lacked probable cause to file criminal charges, he had to either prove that Brookshire did not believe, or that a reasonable person would not have believed, that he was guilty of theft at the time charges were filed against him. *See Browning–Ferris Industries,* 881 S.W.2d at 298 (Tex.1994). To be convicted of the crime of theft, the prosecutor must prove that Richey had the "intent to deprive the owner of the property," not just inadvertent appropriation.

My disagreement with the majority opinion is two-fold. First, I believe the majority correctly stated the standard upon which we must view the evidence in a "no evidence" challenge; however, they incorrectly applied the standard and viewed the evidence in the light most favorable to Brookshire. Second, I believe the majority overlooked the primary factor that apparently offended the jury—Brookshire's decision to prosecute Richey for theft, regardless of whether it had probable cause to support its decision. After reviewing the evidence in the light most favorable to the jury verdict, I believe the evidence clearly shows that Farris' actions were unreasonable and unbending, not just to Richey, but to every similarly situated customer at Brookshire.

Brookshire argued, and a majority of this Court holds, that the "undisputed facts conclusively prove" that Brookshire had probable cause to file the criminal complaint. However, the facts that were presented before the jury were anything but conclusive. At the time of this incident, Kelley Richey was married and had three children. He graduated with a business degree from the University of Texas in Petroleum Management and earned a living investing money in oil ventures for other people. Richey's gross income for the year in which this incident occurred was $200,000.

Before Richey came to the Super 1 Store, he had helped a friend install a wooden floor in a utility trailer. With a grocery list in his hand, Richey came into the Super 1 to pick up various items for his family. When Richey got a grocery cart, he put a package of cigarettes in it. Farris became suspicious and began following Richey around the store. Over a period of time, Farris watched Richey twiddle the package of cigarettes and drop them back in his cart. According to Farris, Richey had made eye contact with Farris and knew that Farris was watching him. Knowing that he was being watched, Richey "concealed" the cigarettes in his left pocket anyway and continued to shop.[3] **Would a reasonable, prudent person conclude that a customer who knew he was being watched by an employee of the store would purposefully steal an item?** According to Farris—Yes!

At the check-out stand, Richey wrote a check in the amount of $51.75 for the groceries in his cart, but failed to pay $1.47 for the package of cigarettes in his pocket. Richey then proceeded to sack his own groceries. While sacking his groceries, Richey began reading the back of an Eggo box. Although Farris admitted that Richey did not appear nervous, nor was it an unusual occurrence for a customer to read the back of a grocery box in the check-out line, Farris concluded that Richey knew he was being watched and was stalling to "figure out what he should do" about the cigarettes in his pocket. Would a reasonable, prudent person conclude **that a customer was stalling to cover up a $1.47 theft of cigarettes, when the customer did not appear nervous, the customer had just paid for groceries, the customer knew that he was being watched by store employees, and the customer still had plenty of money in his pocket to pay for the cigarettes?** According to Farris and every Brookshire employee that testified—Yes!

On leaving the store, Richey noticed the charity bin by the exit, left his grocery cart, and got a paper sack and filled it with 28 jars of baby food. He then went back through

---

**3.** The jury heard testimony that it is not unusual for a smoker to put cigarettes in a pocket by habit.

the check-out line, paid $8.89 in cash for the baby food, and then deposited the sack of baby food in the charity bin. Farris told the jury that, in his opinion, Richey re-entered the store to buy baby food for the charity bin just to "cover up for the cigarette theft." **Would a reasonable prudent person under the circumstances conclude that a customer would return to the store to pay $8.89 in cash for food for the charity bin so that the customer could "cover up" the theft of a package cigarettes?** According to Farris and every Brookshire employee that testified—Yes!

Based on his suspicions, Farris and another Brookshire employee detained Richey. After being asked by Farris if he had forgotten to pay for something, Richey first said "No," then said that he must have inadvertently put the cigarettes in his pocket. Farris admitted that Richey did not yell or run from them when he was confronted and that Richey offered to pay for the cigarettes. Brookshire refused Richey's offer, as well as his attempt to explain his actions. In fact, Richey testified, and Farris admitted, that after he was detained by Brookshire for questioning, no Brookshire employee engaged in any kind of conversation with Richey. Richey admitted that "it was a silly mistake" and that he tried to explain, but no one would let him talk, and "they wouldn't even recognize [him] at all." **Would a reasonable prudent person under the circumstances give a customer an opportunity to talk if the customer had just spent over $60.00 for merchandise from the store?** According to Farris and every Brookshire employee that testified—No!

Brookshire's failure to act was as incriminating as its actions. Generally, a party who files a criminal complaint in good faith, makes full and fair disclosure of all of the facts and circumstances known to the party. *See Compton v. Calabria*, 811 S.W.2d 945, 950 (Tex.App.—Dallas 1991, no writ). However, if the defendant knowingly makes false statements to the prosecuting attorney or *withholds* material information from the prosecuting attorney, a different situation arises. *Andrews v. Dewberry*, 242 S.W.2d 685, 688 (Tex.Civ.App.—Fort Worth 1951,

writ ref'd n.r.e.). Should the party who filed the complaint fail to act in good faith when the party discloses the material facts known at the time, a jury can infer that probable cause did not exist. *Eans v. Grocer Supply Co.*, 580 S.W.2d 17, 21 (Tex.App.—Houston [1st Dist.] 1979, no writ).

Farris admitted that Brookshire stressed accuracy in the internal reports employees make regarding incidents of shoplifting that occur in its stores. He confirmed that he filled out the internal report on Richey while he was waiting for the police to come so that the details of the incident would be "fresh on his mind." However, **neither the internal report nor the report filled out for the City of Tyler Police Department gave any indication that Richey had initially paid for groceries, nor did it mention that he had returned to the store to purchase baby food to place in the charity bin.**

Both reports basically stated that Richey walked into the store, took cigarettes, didn't pay, and then left the store. Farris did not include in Richey's report any of the other factors that he considered to be incriminating to support his decision to prosecute Richey for theft. Farris failed to mention Richey's alleged "shifty looks," his "stalling tactics," or his "nervous twitch," until **three years later** when Farris testified at the civil trial to defend Brookshire against Richey's claim for malicious prosecution. Farris admitted that any other facts and circumstances surrounding the incident didn't "mean a hill of beans" to him, nor did he think that any other facts were relevant. All that mattered to Farris was that Richey took an item out of the store without paying for it. Had Farris included the other factors which contributed to his decision, the reports would have accurately reflected the circumstances under which Brookshire decided to prosecute Richey, and could have supported, mitigated, or refuted Brookshire's defense that it had probable cause to prosecute. **Would a reasonable prudent person under the circumstances fail to accurately describe the suspicious circumstances that led to a decision to file criminal charges against a suspected shoplifter?** No witness seemed to have an answer for this question.

Because material facts were not reported in Brookshire's internal report, or in the City of Tyler's police report, the jury could have believed that Brookshire did not act in good faith when it filed the criminal complaint against Richey and that it lacked probable cause to file the charges. Farris's "civil trial recollection" of Richey's "suspicious conduct" could have been construed by the jury to have been fabricated. At a minimum, the jury could have inferred that Brookshire lacked probable cause to file criminal charges against Richey.

The jury may have also been concerned with Farris's actions in light of Brookshire's store policy. As manager of the store, Farris confirmed that when a customer leaves the store without paying for an item, he is not restricted to filing a criminal complaint. Similar testimony was given by Brookshire's District Manager and its corporate officer in charge of loss control. Brookshire's store policy reads in part:

> Whenever you observe suspicious conduct, you may warn the suspected shoplifter against shoplifting, **you may remind the customer to pay for all merchandise, or request that a customer leave the store. . . .**
>
> You should detain a customer to investigate ownership of merchandise if you are:
>
> (1) sure an employee saw a suspected shoplifter conceal merchandise, and
>
> (2) sure that the suspected shoplifter still has the merchandise in his possession, and
>
> (3) sure that the suspected shoplifter has an opportunity to pay for the concealed merchandise by having passed through the check out stand, and
>
> (4) **if after a reasonable investigation,** you believe the person is guilty of shoplifting, then you call the police and don't accept payment for the merchandise.

(Emphasis added.)

All the Brookshire employees who testified had worked for Brookshire 20 plus years and had worked their way through the ranks to management. Each of them vowed strict compliance with Brookshire's policy. They confirmed that they were expected to evaluate each circumstance and investigate the facts prior to calling the police; however, each employee also admitted that, in reality, their evaluations regarding a customers' intent to steal was limited to whether a customer had left the store without paying for merchandise. Kevin Santone, a Brookshire employee for 22 years and the district manager in charge of six Super 1 stores in the area, testified that he had never dismissed any criminal charges against any customer who had left the store without paying for an item. Similar testimony was given by Jack Edward Millican, a Brookshire employee for 21 years.

Farris admitted that, out of approximately 348 customers who had left the store without paying for an item, he had **never exercised any options** afforded to him by Brookshire's policy except to file criminal charges. In accordance with his actions involving the previous 348 customers, Farris admitted that he did not do any investigation on Richey nor did he give him any opportunity to talk before Farris filed criminal charges. Without any questions asked, without any explanations allowed, without any consideration given to the circumstances surrounding Richey's actions, Farris filed criminal charges the following day.

On February 1, 1990, Richey's attorney gave Brookshire a chance to reevaluate their position and wrote the following letter:

Dear Mr. Brookshire:

I represent Kelley Richey of Tyler, Texas. He's also a close friend and has been my brother-in-law for almost seventeen years. Shortly before last Christmas, in the early morning hours, he was doing some grocery shopping in the Super 1 Food Store in Tyler. He purchased roughly $30.00 worth of groceries. As he was about to leave, he observed a display requesting food donations in the store. He went back into the store and purchased $11.00 worth of baby food which he deposited in the charity display. While in the store, he had inadvertently placed a pack (one pack) of cigarettes in his jacket pocket. The manager called the police who cited Mr. Richey for misdemeanor theft. The trial is scheduled for March 19 and I have requested

that it be before a jury. This letter is written in the hope that the matter can be resolved without going that far. First, Mr. Richey concedes that putting the cigarettes in his jacket pocket was a stupid thing to do, but, he had every intention of paying for them. Had anyone simply pointed it out, he would have paid for them as he did for the other $41.00 worth of groceries he purchased. A man doesn't go into a store to steal a pack of cigarettes when he spends $11.00 on baby food for a charity display.

Mr. Richey grew up in Tyler, went to Robert E. Lee and the University of Texas. He's married with three daughters and a successful businessman with a six figure income. He is not a thief. The incident was unfortunate and a silly mistake on his part. It has already caused him a great deal of embarrassment.

I would simply ask that you review the facts of this case—speak to the manager—and consider if justice would best be served by pursuing it any further. Mr. Richey is certainly not going to plead guilty when he had no intention of stealing anything.

As a former felony prosecutor, I recognize that stores such as yours suffer from the intentional acts of shoplifters. However, there was no such intention here and had the store manager just reminded him of the cigarettes when he was checking out, the matter would have been resolved immediately. Unfortunately, the police were called first and here we are.

I would appreciate it if you would advise me of your intentions regarding the prosecution of this case. It is in municipal court, NO. 032764. If you can't bring yourself to make an exception under these circumstances, then we have no choice but to let a jury decide. I'm hoping that won't be necessary.

Brookshire never responded. No telephone call—no consideration that its position may have been extreme in light of the circumstances. I submit that there *was* evidence to support the jury's conclusion that Farris's analysis of the circumstances was, at best, calloused and unreasonable. A customer who leaves the store without paying for $1.47 pack of cigarettes, but has written a check in the amount of $51.75 for groceries and has reentered the store to pay $8.89 in cash for food to place in a charity bin, was not afforded any consideration that the customer's failure to pay for the package of cigarettes may have been inadvertent. In fact, Farris testified that it made "perfect sense" to him that a customer would go back into a store and spend $8.89 in cash to put food in a charity bin so that the customer could cover up the theft of one package of cigarettes. The record is clear that the issue of probable cause, or the lack of it, never crossed Farris's mind. It wasn't necessary ... Brookshire prosecutes everyone, **regardless of the circumstances.**

Brookshire employees were also proud that they are much more intolerant if Brookshire employees leave the store without paying for merchandise. Jack Edward Millican, Director of Safety and Loss Control testified that he had worked for Brookshire for 21 years. He stated that if a Brookshire employee is caught leaving the store with an item without paying for it, the employee is fired. However, in Brookshire's General Information Booklet for employees, it states:

> Partners will not be punished for honest errors, but it is the Company's intention to let partners know dishonesty will not be tolerated.

Millican admitted that employees are not punished if the employee takes something from the store inadvertently, and that the employee would be allowed to explain the circumstances upon which he had left the store without paying for merchandise. If after the investigation, Brookshire determined that the employee's acts were unintentional, the employee would not be punished.

Every Brookshire employee conceded that people sometimes make mistakes and that they had never known of an incident where a suspected shoplifter dropped food in a charity bin in an effort to cover up for the theft of an item; however, each one stated that every customer who walks out the door without paying for an item is considered a thief. No act is inadvertent. There is no room for a mistake. Any consideration that the per

ceived shoplifting activity by the customer may have been inadvertent is not a part of the analysis Brookshire employees afford to a customer before filing a criminal complaint against the customer for theft.

Kevin Santone, the district manager of six Super 1 stores, testified that once Brookshire considers you a thief, you are always considered a thief. Even though the jury acquitted Richey of all criminal charges that had been filed against him, Santone stated that Richey was still considered a thief to Brookshire and that Richey could not come back into the store. There are no exceptions. Regardless of the circumstances, theft charges will be filed, the customer will be prosecuted, and even if the customer is acquitted, the customer is still a thief to Brookshire. Remembering that we are to view this incident from the standpoint of a **reasonable prudent person under the circumstances,** I conclude that the there was more than a scintilla of evidence for the jury to find that neither Farris, nor any Brookshire employee, ever stopped to determine whether there was probable cause to convict Richey. It wasn't necessary ... Brookshire prosecutes everyone, **regardless of the circumstances. No set of circumstances could have been presented to prevent Brookshire from filing criminal charges against Richey for theft.**

From the record, I believe that the jury was not only convinced that the evidence supported their verdict, but was also incensed by Brookshire's actions. In assessing his damages, Richey asked the jury to award him the sum of $9,200.00, which represented $100.00 a day for every day between the time the incident occurred and the date that the jury acquitted him of the criminal charges that Brookshire had filed. During the jury deliberations, the record reflects that the jury sent a note to the judge and asked whether they were limited by the amount of damages Richey had requested. After further deliberations, the jury awarded Richey $18,400.00 in actual damages and an additional $18,400.00 in exemplary damages. This award was after the jury had been informed that: (1) shoplifting is a large problem for Brookshire; (2) the number one item shoplifted at Brookshire stores is cigarettes; (3) people of all ages and all economic backgrounds shoplift; and (4) shoplifters do illogical things.

I do not minimize the difficulty a retail store has in attempting to control shoplifting, and I do not think the jury did. There is a delicate balance between protecting against wrongful prosecution and encouraging the reporting of criminal conduct. As with any other cause of action, if the elements of malicious prosecution are proven by the plaintiff and the defendant has put forth every piece of evidence it had to defend against the allegations and the jury finds for the plaintiff, liability has been established. In this case, there was more than a scintilla of evidence to support the jury's finding that Brookshire was liable for maliciously prosecuting Richey. In analyzing the credibility of the witnesses and weighing the evidence, the jury is free to believe or disbelieve the testimony of each witness when it attempts to arrive at a verdict. *Lawson–Avila Construction, Inc. v. Stoutamire,* 791 S.W.2d 584 (Tex.App.—San Antonio 1990, writ denied). After hearing Brookshire's concerns and difficulty in controlling shoplifting in its stores, the jury found that Brookshire filed criminal charges against Richey maliciously and **awarded him four (4) times the amount of damages that he had requested.** Although our evaluation of the facts may have been different, none of us were present to weigh the evidence and judge the credibility of the witnesses and we must not substitute our judgment for that of the jury. *Id.* **Points one through four should be overruled and the judgment should be affirmed.**